# CHARLESTON.

## GUERIN v. P. C. C. & ST. LOUIS RY. CO.

Submitted June 10, 1912.   Decided September 30, 1913.

1. CARRIERS—*Duty to Alighting Passenger.*

It is the duty of a railroad company to stop its trains at stations a reasonable length of time for its passengers to alight with safety, and its failure to do so is negligence.   (p. 726).

2. SAME—*Injury to Alighting Passenger.*

A railroad company is liable to a passenger who, without fault on his part, is injured, while attempting to alight, by the starting and sudden stopping of the train, after it had stopped at his destination to let off and take on passengers, but not long enough to give him a reasonable opportunity to get off.  (p. 727).

3. APPEAL AND ERROR.

When the verdict rests upon conflicting oral testimony of expert witnesses, and there are no controlling facts or circumstances, admitted or clearly proven, which are inconsistent with the jury's finding, the court should not disturb it.  (p. 728).

Error to Circuit Court, Brooke County.

Action by Estella Guerin and Frank L. Guerin, her husband, against the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company.   Judgment for plaintiffs and defendant brings error.

*Affirmed.*

*J. B. Sommerville,* for plaintiff in error.

*R. L. Ramsey* and *John J. Coniff,* for defendants in error.

WILLIAMS, JUDGE:

Estella Guerin and Frank Guerin, her husband, recovered a verdict for $5,000.00 in a joint action against the Pittsburgh,

Cincinnati, Chicago & St. Louis Railway Company, a corporation, for a personal injury sustained by Mrs. Guerin, alleged to have been caused by defendant's negligence. The court refused to set aside the verdict and grant it a new trial on defendant's motion, and entered judgment on the verdict, and defendant obtained this writ of error.

The principal question presented is: Does the evidence support the verdict of the jury? Having purchased their tickets, plaintiffs, with their three little children, aged about one, four and five years respectively, boarded defendant's train at Pittsburgh to go to Follansbee. They were riding in the rear coach of a train composed of five day coaches and a baggage car. They were seated on opposite sides of the aisle, near the front end of the coach, and when the train stopped at Follansbee Mr. Guerin took the baggage and the oldest child and got off, and Mrs. Guerin was following him, carrying the youngest child in her arms and leading the other. Just as she had gotten out onto the platform of the coach and was about to start down the steps the train began to pull out. The brakeman, who was between the third and fourth cars, says he had gotten onto the step and looked back, saw Mrs. Guerin's position and called to her to "wait a minute," and immediately ran into the coach and put on the brakes and stopped the train suddenly, which threw her against the railing of the platform with such force, she says, as to bruise and injure her internally. The train had moved about the distance of half a car length and was going at the rate of about two miles per hour when it was stopped. This occurred at 9:35 P. M. on the 24th December, 1908. It was therefore dark. There is evidence that the coach on which plaintiffs were riding was crowded with passengers and that Mrs. Guerin was exercising reasonable care and diligence to alight from it when she was hurt. She had a child in her arms and was leading another by the hand and was, therefore, necessarily hindered in her progress.

It was clearly the duty of defendant to stop its train a reasonable length of time to allow all its passengers for Follansbee to alight in safety. If, on account of the large number of passengers, it was necessary to make a longer stop than usual,

it was its duty to do so.   4 Elliott on Railroads, section 1628. The uncontradicted evidence is that Mrs. Guerin had gotten out of the coach onto the platform, while the train was standing, and was in the act of starting down the steps when the train started, and while she was in that position the brakeman caused the train to be stopped, after it had moved about half a car length, so suddenly as to jerk her against the railing.   This was negligence.   *Duty v. C. & O. Ry. Co.*, 70 W. Va. 14; 4 Elliott on Railroads, section 1627, and cases cited in note 10.

It is also insisted that the verdict is excessive.   It appears that the railing of the car came in violent contact with Mrs. Guerin's body on her right side just above, and a little in front of, the pelvic bone.   She immediately went to the home of her mother about two squares from the station and had arnica and witch hazel applied to the bruised parts.   On the next day, which was Christmas, she and her husband went by street car to Toronto, Ohio, to visit at the home of Mr. Guerin's father and remained there two days and nights.   They then returned to Follansbee and remained there the night of the 27th, and on the next day went to Pittsburgh.   On the 3d of January following she called in Dr. Henderson, her family physician at McKeesport, Pennsylvania, who gave her some medicine.   He was called to see her again between the 5th and 10th of April following.   At that time Dr. McCurdy was also called in and he examined her but gave her no treatment.   She was sick abed for two weeks in August following, and was treated every day by Dr. Henderson.   She then went to the home of her mother in Follansbee and remained there two or three months during which time, she says, she was not treated by any physician but was ailing all the time.   And in February, 1910, she was taken to the hospital in Pittsburg and underwent an operation.   Dr. Dixon, who performed the operation, says he found a tumor on the right ovary which was adhered to the appendix, also a degeneration, in the early stage, of the left ovary, and that the uterus was turned down at right angles toward the right ovary.   He says he found it necessary to remove the ovaries, and did so, and also sewed up a laceration which he found in the perineum.   The testimony conflicts as to whether these serious

troubles were the direct result of the hurt she received on the 24th December, 1908, or were due to child birth. Mrs. Guerin testifies that, prior to the accident, she was a perfectly strong and healthy woman, and that shortly thereafter she began to have pains in the region of the right ovary, which continued to grow more severe until the operation was performed. Dr. Dixon who appears to be a skillful surgeon, testified, in answer to an hypothetical question based upon the facts and circumstances testified to by plaintiff's witnesses, that her injury was the direct result of the hurt which she received when alighting from the train. In view of the nature of her injury, it being altogether internal, the opinions of skillful physicians and surgeons were the best proof of which the nature of the case was susceptible. And the opinion evidence of Dr. Dixon is sufficient to support the verdict. True he is contradicted by the opinions of other experts, but it was the province of the jury to decide upon the weight or value to be given to their testimony. There being no controlling facts or circumstances, undisputed, which are inconsistent with the testimony of Dr. Dixon, the court properly overruled defendants motion to set aside the verdict. Finding no error, the judgment is affirmed.

*Affirmed.*