# CHARLESTON.

CAIN v. KANAWHA TRACTION & ELECTRIC COMPANY.

Submitted February 6, 1918. Decided February 12, 1918.

1. CARRIERS—*Personal Injury—Allegation and Proof—Variance.*

In an action for personal injuries the declaration charged that defendant, while plaintiff, a passenger, was in the act of alighting and without warning him "carelessly and negligently and suddenly" started its car whereby and with great force and violently he was thrown upon the pavement and injured. The evidence tended to prove that plaintiff was not given a reasonable time to alight, and that the conductor of the car in disregard of his duty signaled the motorman to go ahead, while plaintiff was in the act of leaving the platform. There was no variance. (p. 633).

2. SAME—*Negligence—Setting Down Passenger.*

Street railway companies in the operation of their cars are charged with the highest degree of care in receiving and discharging passengers, and it is no defense that the conductor in charge

81 W. Va.

of a car does not see a passenger in the act of alighting or getting on before signaling the motorman to go ahead. It is his bounden duty to see or know that passengers have reached places of safety before starting the car. (p. 634).

3. SAME—*Rule of Company—Setting Down Passenger—Negligence.*

The fact that the rules of the railway company require conductors before crossing the tracks of a steam railroad to go forward and onto the tracks of the other railroad and look out for approaching cars or locomotives thereon before signaling the motorman to go ahead will not excuse conductors from first discharging their duty to passengers alighting or getting on the car, and his negligent performance of any of the duties so imposed upon him will render the railway company liable to a passenger injured thereby. (p. 638).

4. APPEAL AND ERROR—*Discretion of Trial Court—Grant of New Trial —Damages.*

When in such an action the nature and extent of the injuries sustained and whether temporary or permanent is left in doubt by the evidence, and the verdict is large, and possibly excessive, and it appears that the jury may have been misled by too broad an instruction given for plaintiff, the judgment of the trial court setting aside the verdict and awarding the defendant a new trial will not be reversed on writ of error. (p. 638).

Error to Circuit Court, Wood County.

Action by Charles S. Cain against the Kanawha Traction & Electric Company. Judgment for plaintiff, and from the award of a new trial, he brings error.

*Affirmed.*

*Reese Blizzard, R. E. Bills, C. N. Matheny* and *C. M. Hanna,* for plaintiff in error.

*J. W. Vandervort* and *Van Winkle & Ambler,* for defendant in error.

MILLER, JUDGE:

A writ of error to the judgment of the circuit court setting aside the verdict of the jury in favor of plaintiff for $5,558.33, for damages for personal injuries alleged to have been sustained by him while a passenger on defendant's car, and. awarding the defendant a new trial.

It does not distinctly appear from the record upon what

ground the court ruled the defendant entitled to a new trial, but those assigned for defendant's motion were: (1) Because the verdict was contrary to the law and evidence; (2) because excessive; (3) because of erroneous and improper instructions given; (4) because proper instructions proposed by defendant were refused; (5) because of erroneous instructions given at the instance of plaintiff, and (6) because of the admission and rejection of evidence.

According to the elaborate briefs and oral arguments of counsel the only error relied on by plaintiff for reversal is the action of the circuit court in setting aside the verdict and adjudging the defendant a new trial. The general rules governing trial courts and this court on writ of error are set forth in the briefs of opposing counsel with copious citation of and quotations from prior decisions pronounced here and in the decisions of other courts and from text writers, but these rules are so well and generally understood and have been so many times iterated and reiterated that we deem it unnecessary to do more than regard them in disposing of the case.

The cause or causes of action alleged in the two counts of the declaration are substantially as follows: That when plaintiff had reached his destination, and the conductor had announced the station, Williamstown and Baltimore and Ohio depot, and after the car had been brought to a stop and plaintiff with due care and without fault on his part had started to and had reached the rear end of the car and was on the point of stepping from the platform thereof to the pavement, and while his body was still upon the car, the defendant carelessly, and negligently, and suddenly and without warning to him, started said car, whereby he was thrown with great force and violently upon said pavement and sustained the injuries of which he complains.

Cross errors are assigned by defendant, but the sufficiency of the declaration, the demurrer to which was overruled by the trial court, is not one of them. The first and principal point made in support of the judgment is that the defendant's alleged negligence consisted in suddenly and violently starting the car, whereas the evidence showed that the car

was started gently up grade, and that plaintiff got off the car while it was in motion, precluding recovery; and that during the trial, plaintiff changed his theory of negligence from that of the sudden starting of the car to want of reasonable time given to alight at destination and want of warning, showing a variance between allegata and probata, precluding recovery.

We observe that the allegation is not that the car was suddenly and *violently started*, but that it was "carelessly and negligently and suddenly" started and without "warning to him." True it is alleged that plaintiff was thereby thrown with great force violently to and upon the pavement, but this characterized the result to plaintiff and not the manner of starting the car. We observe again that the allegation is that defendant in disregard of its duty, carelessly and negligently and suddenly started the car whereby plaintiff as he was on the point of stepping from the platform was with great force and violently thrown upon the pavement and injured. It has been frequently decided here, in actions of this character, that there is no variance in respect to specification of mere matters of detail, concerning the manner or instrumentalities by which the injury is inflicted, if the substantial elements of negligence be proven. *Kennedy* v. *C. & O. Ry. Co.*, 68 W. Va. 589, 592, and cases cited.

If on the trial the evidence was sufficient to establish the fact that plaintiff was not under all the circumstances allowed a reasonable time to alight, or the defendant was otherwise negligent in not observing him in his perilous condition and protecting him, and he was without fault, as to which, on account of the new trial awarded, we express no opinion, would not such evidence support without variance the charge of carelessly, negligently and suddenly starting the car and doing plaintiff the injuries as charged? We think it would.

Plaintiff relied on two theories of liability, first, negligence of the defendant in not giving him reasonable time to leave the car in safety, second, negligence in not observing him on the platform or steps in his perilous condition before giving the signal to go ahead. It is well settled by our decisions and everywhere, that it is actionable negligence on the part of

any carrier of passengers not to stop its cars for a sufficient time to allow passengers to alight and get aboard with safety at stopping places. *Normile* v. *Wheeling Traction Co.*, 57 W. Va. 132; *Duty* v. *C. & O. Ry. Co.*, 70 W. Va. 14; *Guerin* v. *Railroad Co.*, 72 W. Va. 725; *Hoylman* v. *K. & M. Ry. Co.*, 65 W. Va. 264; 1 Nellis on Street Railways, (2nd ed.) section 305, and cases cited. Whether the stop was reasonable, plaintiff who was his only witness on this question swore that he was seated in the front end of the car and that when the car stopped he arose from his seat, gathered up his umbrella, rain coat and suit case and started back to the rear end platform where passengers were discharged, and taken on, that not many got off and but two or three got on, that he was seated farther away from this platform than most of the passengers on the car, that he did not delay, but that as he was leaving the platform, a couple of ladies near the bottom of the steps were coming on, and that he stepped back to let them pass him and they went on in, after which he started and was on one of the steps, not the lower one, when the car started suddenly and threw him out on the pavement; and he distinctly denies that the car had moved ten or fifteen feet before he started to get off the platform; and when asked on cross-examination whether the car had not stopped for a sufficient length of time for the passengers to get off if they desired to do so, he answered, ''Well, I done my best to get off and didn't get off.''

For the defendant the evidence of several witnesses was that the car stopped from one to three minutes; none of them profess to have accurately noted the time; it was their opinion only, with a variation of from one to three minutes. The conductor, who left the car ahead of the passengers, swears that he walked briskly forward the full length of and from fifteen to twenty feet beyond the front end of the car to the center of the Baltimore and Ohio Railroad track, and stood about fifteen feet from the defendant's track where it crossed the track of the other company, and after looking up and down the track for approaching cars or trains on that track, and after looking back to the rear end of his car, and seeing no one getting on or off he gave the motorman the signal to

go ahead. He says that from where he stood he could see any one on the lower step alighting or attempting to get aboard the car, but not if they were on the other steps or on top of the platform. The other witnesses of the defendant also swear, one of them, that plaintiff in going out halted at the door, others, that he undertook to get off or step off after the car started, and all agree that the place where plaintiff stepped off or fell or was thrown off was from ten to fifteen feet from where the steps were when the car stood and started. It is contended on behalf of defendant that this evidence accompanied by the physical facts disclosed, and the evidence of bystanders not passengers who also witnessed the occurrence is overwhelming on the question of the reasonableness of the stop and that the judgment was justified on this ground, while plaintiff's counsel invoke the well settled rule that when the facts depend on conflicting oral evidence it is the province of the jury and not of the court to determine the fact. As we have concluded to affirm the judgment for other reasons presently to be stated, and there is to be a new trial, when the evidence may be different, we deem it improper to express any opinion on the sufficiency of this evidence to sustain the verdict.

On the other theory of the plaintiff that it was the duty of the defendant's conductor or motorman under the circumstances to have seen him on the platform or steps, and before giving the signal to go ahead to have allowed him time to get off, the authorities are apparently not entirely harmonious, but perhaps not actually inharmonious when applied to the different classes of carriers. If such is the law the fact that the conductor or motorman did not discharge his duty to plaintiff was provable we think under the general charge of negligence in operating the car. In *Hoylman* v. *K. & M. Ry. Co., supra,* the case of a steam railroad operating trains composed of numerous coaches, baggage, express, and passenger, the case turned on the fact of contributory negligence of the passenger in attempting to alight from a moving train, a fact not really in controversy. In that case it is said the proof was not clear that the stop was not reasonable, and arguendo and with reference to some decided cases

that the conductor has discharged the full duty and obligation of carrier to passenger when he has carried him safely to destination and there announces the arrival of the train or the station, and has given him a reasonable opportunity to leave the cars. That case and the cases referred to as supporting the proposition we believe involved the transactions of steam railroads. On the other hand, our case of *Normile v. Wheeling Traction Co., supra,* applies a stricter and more onerous rule for the business of street railways. The seventh point of the syllabus in that case in accordance with reason and authorities cited in the opinion is that: "Where a street car company stops its cars for the purpose of receiving passengers, it is charged with the highest degree of care to see that all passengers lawfully entering its cars get to a place of safety thereon before starting its cars." And in the opinion it is said, as particularly applicable to the concrete case there presented: "It is no excuse for the conductor that he did not see that Mrs. Normile had not safely boarded the car, because the law imposes upon him the duty to see, and his failure to see does not excuse the company." And of course the same duty would be owing by the carrier to passengers in the act of leaving the cars. In Nellis on Street Railways, (2nd. ed.) section 297, it is said: "The care, skill, and diligence which the law exacts of a street railway company for the safety of its passengers requires that the conductor should pay careful attention to persons who are properly proceeding to get on or off a street car, and see to it that the car is so operated as to permit them to board or alight without injury. The car should not be started suddenly and without warning before an intending passenger has had time to get on the car, nor should it fail to stop a sufficient length of time to permit a passenger who has expressed a desire so to do to get off in safety. The conductor is bound to know in starting the car suddenly and with full force that no person is attempting to embark, or is in a position of danger. And a passenger has the right to presume, in the absence of knowledge or warning to the contrary, that all necessary precautions have been, and will be, taken for his safe transportation." Many decisions affirming this law are cited in the notes sup-

porting the text. And again in section 303, the same author says: "A common carrier of passengers is required to use the highest degree of care, vigilance, and foresight, consistent with the character and mode of conveyance adopted, and reasonable and practicable in the operation of its road, to safely carry and deliver its passengers. A standing trolley car is an invitation for a passenger to alight, and he has the right to assume that the car will not be moved, without signal or notice to him, while he is openly and expeditiously so doing." The cases cited are street railway cases. *Washington & G. R. Co.* v. *Tobriner,* 147 U. S. 571, 37 L. ed. 284. See, also, 21 Am. Neg. Reps. 604, note, classifying the decisions.

It was claimed in argument that such a duty as applied to the facts and circumstances of the case at bar was impossible of performance, because the rules of the company and the safety of its property and passengers required the conductor to go forward to the railway crossing, and flag the motorman across in safety. But neither the rule of the company, nor the rule of reason required the conductor to leave his car to perform that duty before he had discharged his duty to passengers getting off and on the car. It was possible for him to discharge both duties without serious interference with the traffic or the rights of any one.

Contributory negligence imputed to plaintiff in attempting to get off the car while in motion is another ground urged in support of the judgment. This was a controverted fact, the plaintiff denying it, the testimony of some of the defendant's witnesses tending to establish it. Where the evidence is conflicting the fact of such negligence is peculiarly one for the jury. When there is no conflict, as in *Hoylman* v. *K. & M. Ry. Co., supra,* the question is one of law for the court. As to the weight of the evidence and on which side it preponderates, in view of the new trial awarded, we express no opinion.

Another ground is that the verdict was excessive. On this proposition the plaintiff's counsel propose to remit the excess if we should be of opinion from the evidence that it is excessive. This we could not do, without consent of defendant. *Cox & Co.* v. *Carter Coal Co.,* 81 W. Va. 555, decided at the present term. We do observe that the evidence of the charac-

ter and permanency of the injuries is quite unsatisfactory, and it may have been upon this ground and the size and character of the verdict that the new trial was awarded. If so, we would be unable to say with due respect to the rule that it takes a stronger case to reverse a judgment awarding than one refusing a new trial, that the court erred. *Varney & Evans* v. *Lumber & Mfg. Co.*, 64 W. Va. 417; *Coalmer* v. *Barrett*, 61 W. Va. 237.

Lastly, the giving and refusing of instructions is urged in justification of the judgment. · The court properly instructed the jury at the instance of the defendant on all theories of the defense, except one perhaps covered by instruction number 13, refused. Others not given were either not good or fully covered by those given. · Instruction number 13 would have absolved the defendant from liability if the fall of or injury to the plaintiff occurred without the knowledge of conductor or motorman, contrary to the views already expressed as to the duty of the carrier and its agents to know before suddenly starting a car that passengers alighting or getting on are not in danger.

The chief ground of complaint of the instructions is as to plaintiff's instructions numbered two and eight. They imposed liability on the defendant if its alleged negligence in starting the car suddenly was done without "warning", and found to be the proximate cause of the injury. It was contended on the authority of judicial decisions cited that there was no duty to warn the plaintiff. Our cases of *Normile* v. *Traction Co.*, and *Duty* v. *Railroad Co.*, *supra*, and perhaps other cases say that the duty to warn passengers so exposed to danger is imposed. So also is the doctrine of the text writer, Nellis, above cited, and the decisions referred to by him. But what kind of warning is meant? Does this duty to warn imply verbal notice, or only the sounding of a gong, the ringing of a bell, the blowing of a whistle, or some known regulation of the carrier sufficient to give the warning? It occurs to us that without some limitation or definition of the character of the warning meant these instructions may have been misleading, and have led the jury into the error of thinking it was incumbent on the defendant to send its con-

ductor to passengers who place themselves in dangerous positions and personally warn them against the dangers so incurred. But that some warning is due in cases of the sudden starting of street cars we think is fully supported by the authorities.

Our conclusion based on the foregoing consideration is to affirm the judgment.                                    *Affirmed.*