# CHARLESTON.

R. B. BARTLETT v. THE BALTIMORE AND OHIO RAILROAD CO.

Submitted April 30, 1919.   Decided May 6, 1919.

1. PLEADING—*Bill of Particulars—Insufficiency—Procedure.*

A bill of particulars may be filed by the plaintiff in an action for personal injuries, even though the same is not demanded by the adverse party, and if the defendant would take advantage of insufficiencies therein he must move for a more specific one. An objection to the filing thereof will not avail him. (p. 123).

2. SAME—*Action for Injuries—Bill of Particulars—Objections to Evidence.*

Where in such case the bill of particulars filed clearly states the matters on account of which damages are claimed, and the amount of damages asked because of each of such matters, it is sufficient to permit the introduction of evidence thereunder. (p. 123).

3. APPEAL AND ERROR—*Verdict—Evidence—Review.*

The verdict of a jury dependent upon conflicting oral testimony will not ordinarily be set aside upon the sole ground that it is not in harmony with the testimony of the greater number of witnesses. (p. 124).

4. CARRIERS—*Duty Towards Passenger—Stopping Train to Permit Passenger to Alight.*

In the performance of its duty, a carrier of passengers must stop its train at a station to which a passenger is destined, and

keep the same stationary a sufficient length of time to allow him to alight therefrom in safety. (p. 127).

5.  SAME—*Alighting from Train—Negligence—Liability.*

Where a passenger, after the station to which he is destined has been announced, and the train upon which he is riding has come to a stop at such station, immediately proceeds to alight from such train, and while he is so doing the same is so suddenly and abruptly moved or jolted as to throw him down and cause him injury, the carrier will be liable, in the absence of an explanation upon its part of such sudden movement of its train attributing the same to a cause beyond its control. (p. 127).

6.  TRIAL—*Requested Instruction—Given Instructions.*

It is not error for the trial court to refuse to give an instruction asked where the proposition of law contained therein is fully covered by other instructions given. (p. 128).

Error to Circuit Court, Lewis County.

Action by R. B. Bartlett against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*E. A. Brannon* and *W. W. Brannon,* for plaintiff in error.
*Charles P. Swint,* for defendant in error.

RITZ, JUDGE:

The defendant railroad company, by this writ of error, seeks reversal of a judgment in favor of the plaintiff for damages for an injury received by him while a passenger on one of its trains.

The plaintiff became a passenger on one of defendant company's trains at its station at Burnsville, his destination being another station named Arnold, in the county of Lewis. He states that when he got on the train at Burnsville he went into a car in which there were no passengers, and that when the next station was reached, while the train was stopped at that point, he removed to the next car to the rear, and placed his handbag or suitcase in the front seat of that car, and seated himself in the fourth or fifth seat from the front. Just before the arrival of the train at Arnold he says that one of the employes of the company in charge of the train an-

nounced the station in a loud tone of voice, and that he immediately prepared to alight. He says that after the train had slowed down he stood up and held on to the seat in front of him with his hands until the train came to a full stop; that he thereupon stepped into the aisle and walked toward the front of the car for the purpose of getting his baggage and alighting from the train; that after proceeding some ten or twelve feet and nearly to the front of the car the train was suddenly and violently moved so that he was thrown forward, his knee striking against one of the seats, and he being able to save himself from being thrown entirely to the floor by catching on another one. He immediately got up, secured his baggage, and left the train, not feeling at that time that his injury was very serious. After getting off the train he went to the residence of a man by the name of Arnold, and there ate dinner, it being about noon when the train arrived at this station. He states that while he was eating, his leg began to pain him very severely, and upon calling the attention of Mrs. Arnold and her mother to this fact they furnished him some liniment with which to bathe it. In this he is corroborated by their testimony. He remained at the Arnold home until about four o'clock in the afternoon, when he walked to the station, and after procuring a ticket to Weston boarded a passenger train for that place. He says that his leg was paining him severely at this time, and when he got on the train he called the attention of the conductor to the injury that he had received. When he got to Weston his condition was such that he was unable to walk, as he claims, without aid. He thereupon procured a pair of crutches, and with the assistance of these he went to the home of a friend who was express agent at Weston, and there remained all night. His condition continued to grow worse, although he was furnished by this friend with liniment during the night with which to bathe the injured member. The next morning he walked on his crutches to the station of the interurban line at Weston, there boarded the car, and went to his home at Lost Creek in Harrison county. When he arrived at the station he was met by some of his family with a wagon in which he rode to his residence. On reaching home he imme-

diately sent for a doctor, and from that time he was unable
for a number of months to walk without crutches.    After
some six or eight months he was able to walk with a crutch
and a cane, and later discarded the crutch and walked with
the cane alone, and at the time of the trial, two years after
the accident, he was endeavoring to get along without either
cane or crutch.    As to the extent of the injury to his leg and
the result upon his activities therefrom, he is fully corrobor-
ated by the physician and surgeon who attended him, and by
his neighbors.    As to the manner in which he received the
injury, there is no direct testimony except his own.    The de-
fendant company introduced the train crew, consisting of
the conductor, engineman, fireman, baggage-master and
brakeman.    All of them testify that there was no sudden
movement or jerking of the train after it stopped at Arnold
on the day in question.    The conductor, engineman, and fire-
man testify that they knew nothing of this injury to the plain-
tiff until the next day, and that when they then heard of it
they conferred together, and were all satisfied that he could
not have been thrown down from any sudden movement of
the train.    The brakeman and baggage-master say that their
attention was not called to it until three days later, when a
claim agent of the company called upon them for a state-
ment, and that at that time they could recall no unusual
movement of the train on the occasion of the injury.    It is
shown, however, that the conductor and the brakeman, at the
time the plaintiff contends he was injured, had stepped off
the train, and were standing on the ground at its side.    The
engineman and fireman were in the engine ahead, and the
baggage-master was in the baggage car, as he stated, pre-
sumably standing at the door for the purpose of receiving or
discharging baggage.    Upon this showing the jury found a
verdict in the favor of the plaintiff, which the circuit court
refused to set aside.

At the trial of the case the plaintiff tendered and asked
leave to file a bill of particulars, in which he set forth the
items for which he claimed damages, and the amount of each
item.    These items were all set out in the declaration, but the
amount claimed on account of each of them was not therein

specified. There was no demand made by the defendant for such a bill of particulars. The defendant objected to the filing of the same, but the court overruled the objection, and allowed it to be filed  This action of the court is now assigned as error. There is no merit in this assignment. The plaintiff was not required to file this bill of particulars, but there was no reason why it should not have been allowed to be filed. Even had the defendant demanded such a bill in this case, and the court had sustained the demand, the one filed would surely have been ample, for it particularizes each item for which damages is claimed, including the expense of nurses, doctors' bills, loss of time of the plaintiff from his work, money spent for medicines, damages for pain and suffering endured by him, and for the services rendered him by members of his family in lieu of nurses. It is a little difficult to understand how plaintiff could have been more particular. Further than that, the defendant did not demand any more particular statement, but simply objected to the filing of this one, nor did it upon the trial of the case object to the introduction of evidence tending to sustain the various items set forth. Ordinarily such bills of particulars are not required in actions of this character, for the reason that the declaration as a rule sets forth the claims of the plaintiff for damages with sufficient certainty to fully inform the defendant thereof. However, there are cases where such a demand is properly sustained. In such case, if the bill of particulars furnished does not, in the opinion of the defendant, sufficiently state the claims relied upon by the plaintiff, his remedy is to move for a more particular statement, or to object to the introduction of any evidence showing, or tending to show damages under an item which it is contended is not sufficiently stated. In this case the defendant does not suggest anything wrong with the bill of particulars filed, and we perceive no insufficiency in the statement of the plaintiff's claim for damage as therein made.

The principal contention of the defendant is that the circuit court should have directed a verdict in its favor. It contends that its evidence so clearly preponderated over that offered by the plaintiff, as to the manner in which the injury

was received, that the court should have directed the jury
to disregard his testimony.   The defendant insists that its
evidence clearly shows that this accident did not happen from
any sudden jerk or sudden move of the train after it had
stopped at Arnold, but that the plaintiff must have started
from his seat before the train had come to a stop, and been
thrown down from some movement of the train incident to
its ordinary operation.   The plaintiff does not contend for
any recovery in this case except upon the theory that after
the train stopped, and he had started to alight therefrom, it
was so suddenly and violently jerked or moved that he was
thrown down and injured.   The instructions given by the
court on his behalf base his right to recover solely upon this
theory.   The defendant cites a number of authorities holding
that where an injury is received by a passenger from or-
dinary swaying or jerking of the train while in motion, such
passenger cannot recover.   Those authorities have no appli-
cation to the state of facts relied upon for recovery here, for
as before indicated there is no direct evidence tending to show
that the plaintiff was injured in any such manner, and such
is not the basis for recovery.   Of course, the defendant con-
tends that its evidence shows that the plaintiff must have
been thrown down from some such swaying or movement of
the train ordinarily incident to making a stop thereof, but
there is no evidence upon which to base this assumption ex-
cept the inference which may be drawn from the plaintiff's
injury, and the testimony of its witnesses that there was no
movement of the train after it stopped; and its contention
is that the jury should not be allowed to find under the evi-
dence in this case that this injury happened in any other way;
that its evidence so far outweighed the evidence of the plain-
tiff that no recovery should have been allowed upon the theory
set up by him.   It contends that the physical fact that the
plaintiff fell forward in the car is evidence that he was not
thrown down by any sudden forward jerking of the train.
This may be true, but the plaintiff in his evidence nowhere
says that the sudden jerking or movement of the train which
threw him down was a forward movement thereof.   He re-
peatedly says in his testimony that this movement or jerk-

was such a one as threw him forward, but he does not say in which direction the train moved or jerked at the time he fell, so that there is nothing in the argument that his testimony is denied by the fact that he fell forward instead of backward. The jerk or movement of the train which threw him down, according to his evidence, was such a one as to throw him forward, and if this required a retrograde movement of the train, that is the kind that occurred. The conflict in the evidence in this case arises solely from the oral testimony of the plaintiff on the one hand and the oral testimony of the train crew on the other. This question was fairly and clearly submitted to the jury by the trial court, and their verdict finds that the plaintiff was injured in the manner in which he testified. It may be said in this connection that the testimony of the defendant's train crew is dependent upon their recollection of an incident to which their attention was not called until the day afterward, as to three of them, and as to the other two, three days later. It was as to what had been done at a station in stopping the train. The jury, no doubt, in considering the testimony, took into consideration these facts, and also the further fact that both the conductor and the brakeman were not upon the train at the time the plaintiff fell, but were standing upon the ground at the side of it. The train crew were unable to testify as to any other thing that happened on that day. None of them had any recollection of seeing the plaintiff on the train; they did not know how long they stopped at this station, or whether or not any baggage had been unloaded at this station on that day. A number of other questions were asked them to test their memory as to what happened during that stop, and they had no recollection of anything except that there was no movement of the train after it stopped until it again started and proceeded on its way. In the case of *Harman* v. *Appalachian Power Co.*, 77 W. Va 48. the plaintiff was suing to recover damages for an injury which she charged was received by her while getting off a street car of the defendant, her contention being that while she was on the step of the car in the act of alighting therefrom the car was suddenly started, and she was thrown to the ground. She was the sole witness in

her behalf. Ten other witnesses, most of whom were passengers on the car, and whose attention was attracted to the plaintiff at the time she received the injury testify that she did not wait for the car to stop at her station, but stepped therefrom while the same was still in motion, and before it had come to a stop. The jury found a verdict in her favor, and the same was sustained, notwithstanding this preponderance of the evidence in favor of the defendant. It will be observed that in that case the defendant's' witnesses had their attention called to the accident at the very time it had happened; that they were observing the plaintiff at the time she alighted, but because of the finding of the jury in her favor this Court, upon mere numerical preponderance of witnesses, would not disturb the verdict. That case was very much stronger for setting aside the verdict because of the preponderance of oral testimony than the case here. Ordinarily no mere numerical preponderance of witnesses will be sufficient to set aside the verdict of a jury, unless such preponderance is supported by some documentary or other evidence which gives to it a character of finality.

It is not seriously contended by the defendant that the plaintiff would not be entitled to recover in this case if he was injured in the manner indicated by his testimony, and as found by the jury. It is the duty of a carrier of passengers to exercise the highest degree of care for the safety of those travelling on its trains, and the performance of this duty requires that such trains shall be stopped at stations where passengers are to alight a sufficient time to allow them to do so in safety, and that while so stopped for such purpose they shall not be moved or handled in such manner as to cause injury to a passenger alighting therefrom. If it is shown that a passenger attempts to alight from a train after it is stopped, and after the carrier's agent has notified passengers to alight by announcing the station, and he is injured by any sudden movement of the train while so alighting, the carrier will be liable in damages for such injury, unless it explains such movement and clearly attributes it to some cause over which it had no control. In this case no such attempt was made. The only defense set up was to deny that

the injury occurred as claimed by the plaintiff. In *Guerin* v. *Railway Co.*, 72 W. Va. 725, it was held that a carrier was liable to a passenger injured while attempting to alight, by the starting or sudden stopping of the train after it had stopped at its destination to let off and take on passengers. In *Duty v. Ry. Co.*, 70 W. Va. 14, it was likewise held to be actionable negligence for the conductor or other servant of the company to start the train while passengers were in the act of getting on or alighting therefrom. In *Kennedy* v. *Ry. Co.*, 68 W. Va. 589, the carrier was held liable for starting the train while a female passenger was alighting therefrom. These decisions are well supported by the authorities in other jurisdictions. *Pomeroy v. Railroad Co.*, 172 Mass. 92; *Nance v Railroad Co.*, 94 N. C. 619; *Norfolk & W. Ry. Co. v. Prinnell.* 1 Va. Dec. 626; *Kentucky and Indiana Bridge Co.* v. *Quinkert*, 2 Ind. App., 244; *East Line Red River Ry. Co.* v. *Rushing*, 69 Tex. 306; *Sauter* v. *Railroad Co.*, 66 N. Y. 50. Innumerable authorities might be cited to support the general proposition, but those above mentioned are decisions in cases similar in their facts to the case we are here considering.

The action of the court in refusing to give a certain instruction asked by the defendant is also relied upon for reversal. This instruction told the jury that where the burden is on a party to prove a material fact in issue, failure to produce an important and necessary witness to such fact raises the presumption that such witness's testimony, if introduced, would be adverse to the contentions of said party. This instruction does not correctly state the proposition of law which it attempts to present. In order for this presumption to exist against a party it must appear that he is able to produce, and has some control, by reason of his situation or relation, over the witness whose testimony would clear up the situation. Such was the case in *Vandevort* v. *Fouse*, 52 W. Va. 214, and *Union Trust Co.* v. *McClellan*, 40 W. Va. 405. In this case it does not appear that the plaintiff did not introduce all the witnesses he could secure. It is not indicated that there was any other witness to this accident available to the plaintiff, or known to him. Even though the instruction did correctly state the proposition of law, it is fully

covered by instructions twenty-one and twenty-two given on behalf of the defendant. They are more favorable to the defendant than it was entitled to in this case, and it was not error for the court to refuse the third request for the same legal proposition.

We conclude that there is no error in the judgment complained of. and the same is affirmed.

*Affirmed.*