# CHARLESTON.

PITTSBURGH-WHEELING COAL COMPANY *v.* WHEELING PUBLIC SERVICE COMPANY

(No. 6251)

Submitted October 16, 1928. Decided October 23, 1928.

*Handlan, Garden & Matthews,* for plaintiff in error.
*John J. Coniff,* for defendant in error.

WOODS, JUDGE:

This is an action of trespass on the case, instituted in the circuit court of Ohio county. The declaration alleged damages in the sum of Four Thousand Dollars by reason of an accident wherein a 3-1/2 ton automobile truck owned by the plaintiff was struck by a street railway car owned and operated by the defendant company. The jury found for the plaintiff in the amount declared on. The plaintiff comes here on writ of error to an order of the trial court setting aside the verdict and awarding a new trial to the defendant on motion of the latter.

The accident occurred at the intersection of Fourth and Center Streets in the town of Fulton. The tracks of defendant company occupy Center Street at that point. It seems the National Road runs parallel to and one block north of Center Street at the Fourth Street intersection. Fourth Street is 20.55 feet in width from curb to curb and Center Street, 34 feet. The driver of plaintiff's truck had been accustomed to driving down Fourth to Center Street and making the turn into that portion of Center Street to the north of the car tracks, a space of 14 feet and 10 inches. To do this he generally moved to the left of the center of Fourth Street. On the occasion of the accident as he turned off the National Road into Fourth Street, another truck turning out of Center Street caused him to pull his truck over to the curb on the right of the street, where he stopped it. This point was 35 feet back from the intersection, and from it the driver's view up Center Street to the right was somewhat obscured by a one story house on the near corner. He resumed the trip

down grade to the intersection where the grade became almost level, expecting, as he testified, to make the turn into that portion of the traveled way to the north of the car track. Observing an approaching street car going in the direction of Elm Grove, after starting to make the turn, he suddenly turned his car back to the left, put on the gas and proceeded to leave the wheel. He testified that he believed that it was impossible for him to make the turn into the space to the north of the car track without having a head-on collision with the approaching street car, and that he cut the car out of its intended direction in the hope of avoiding a collision. The motorman operating defendant's street car stated that there was no intimation at any time that the truck would do otherwise than make the turn into that portion of Center Street to the north of the car tracks, and that while he could have stopped within three or four feet, the change in direction of the plaintiff's driver was so sudden that he did not have time to do anything.

The motion to set aside the verdict and grant a new trial was based upon alleged errors in the giving and refusing of instructions, the introduction of evidence, the excessiveness of the verdict and that the same was contrary to the evidence, and that plaintiff was not entitled to a recovery, since the driver was shown to be guilty of contributory negligence. It was agreed by counsel, before the court, that the trial court sustained the motion on the following grounds: (1) that instruction No. 9-A, in regard to last clear chance, should not have been given, and (2) that the verdict was excessive.

Was the doctrine of "last clear chance" applicable in the case made here? This doctrine can not be successfully invoked where the plaintiff has carelessly placed himself in a position of danger, and the record discloses no act of omission or commission by the defendant, after discovering the danger of the plaintiff, whereby the accident might have been avoided. *Buchanan* v. *Railway Company*, 99 W. Va. 326. The driver for the plaintiff brought his truck to a complete stop at a point near the right curb of Fourth Street 35 feet from the nearest rail of the car line. He could not see the street car coming from that point. The fact that he had

traveled over this same route daily for six weeks established his knowledge of the presence of the track and that cars traveled over it at frequent intervals. That he knew how to make the turn without subjecting himself to the danger of a collision is shown by his own testimony. From the point on Fourth Street where he had stopped, he started off in high gear from the momentum of the car, drifting toward Center Street, at the same time steering his car to the left and to the center of Fourth Street in order that he might make the turn to the right without his "front end going over past the center of Center Street." He states that he was moving at a rate of six or seven miles per hour, that he had his car under control, and that his brakes were in excellent condition. Just before he got to the corner he states that he started to make his turn, and that he was about eight feet from the street car line when he saw the approaching street car. At this time he shifted his truck into second gear. This was the situation when he says that he realized it was impossible to make the turn to the right without a head-on collision, and when he pulled to the left and tried to get across the street car track before the oncoming street car hit him. In his effort to get across the track, he put on the gas and leaped from the car. The impact came almost instantaneously. He made no effort to stop the truck and avert the accident. He states that he could stop his truck at the speed he was going in about three or four feet, but later states that under the existing conditions that it would take fifteen or eighteen feet. He admits that he knew of this before starting down into Center Street. Knowing this, did he in reality have control over his car?

Turning now to the street car: What did the motorman do or omit to do after discovering the danger to the plaintiff whereby the accident might have been avoided? While the plaintiff's witnesses fix the speed of the street car at about twenty-five miles per hour, the motorman and divers people riding in the car say it was traveling about four to six miles per hour. Counsel for plaintiff claim that going at the latter rate of speed the motorman could have stopped within three or four feet; but that he did not apply his emergency brake

or any brake. The motorman tells why. He swears that the truck driver turned his truck so suddenly on the track in front of the street car that he had no chance to do anything. The conductor and other employees on the car at the time of the accident sustain him. The place of the impact likewise tends to support this contention of the motorman. He testifies that he first saw the truck when it was turning to the right; that, when the sudden turn was made back to the left in an attempt to cross the track in front of the street car, that it was not more than a couple of feet away. He describes it: "See he just hit that quick (witness clapped hands). It just come that sudden. I didn't know what hit me." It is in evidence that beyond the track Fourth Street is not used as a thoroughfare. Trucks coming from Fourth Street and up Center Street toward Wheeling would travel on the north side of the car track. If the motorman was right in saying that he had turned to the right, he would have no reason to believe that the truck driver was going to cross the track. He was in a safe place at the time the motorman first sighted him. The sudden change in his course brought about the catastrophe.

But there is evidence tending to show that plaintiff was not in a safe place, or in such a place as would call for some caution on the part of the motorman in the operation of his street car. Witness Jones, who observed the accident from a point near the car track on Center Street, 150 feet to the east of the Fourth Street intersection, states that he noticed the truck enter the north side of the street car rail, and that in his judgment the street car was then flush with the west side of Fourth Street. The cars collided somewhere between the center and the east curb line of Fourth Street. He further states that he did not notice any depreciation in the speed on the part of the street car, which he estimated from his position directly to its front, to be about twenty-five miles per hour. Albert Cromes states that the street car was coming at a pretty good rate of speed, and that he did not notice any slackening of speed. Does this latter testimony raise the question of whether the motorman observed the truck in a position of peril soon enough to stop his car and avoid the

accident? Thus it is apparent that the question here presented, of whether or not there is appreciable evidence to warrant the giving of the instruction on last clear chance, is one of such peculiar nicety that we make no ruling, since the action of the trial court in awarding a new trial must be sustained on other grounds, otherwise than to make the observation that the evidence is very unsatisfactory as to the position of the truck immediately prior to the impact, i. e., whether it was in a place of safety, and, if not, whether it was possible of being placed there. This doubtless was the result of not having the truck driver before the jury, as his testimony was taken by deposition prior to the trial. No opportunity was therefore afforded either party to the litigation for any examination or cross-examination of him on controversial vital points to them developed by witnesses at the trial.

The other ground on which the court set aside the verdict was its excessiveness. No witness testified to the *quantum* of damages actually found by the jury by its verdict. It is true that one witness stated that the value of the truck would run between $4,000.00 and $4,500.00, and that, after the accident, its value would run from $250.00 to $350.00. As an example of the character of his testimony we quote from the record: "Q. Do you know what the market value or what the prices of those trucks are new? A. I *don't know what the type of those are,* but I know dump trucks of that type run from $5,500.00 to $6,000.00. Q. What would you say would be a fair market value of that truck as it was on the day at the time you last saw it, prior to the accident? A. Well, that depends on the age of the truck. Q. Well, assuming the truck was fifteen months old. A. Why, I would *judge* it would run between $4,000.00 and $4,500.00." Only two other witnesses testified as to the market value of the truck. The one put a market value on it immediately before the accident of between $3,900.00 and $4,100.00 and the other fixed such market value at approximately $3,700.00. The latter placed the market value of the truck after the accident at $250.00 to $300.00. This would make the minimum damage thereof $3,400.00 and the maximum at $3,450.00.

The statement of the first witness, upon which the plaintiff pins its faith for reversal of the judgment of the trial court, in the manner made amounted to merely a guess. While the price of the truck was originally $5,000.00, of which $4,000.00 was paid in cash, and the other thousand by trade in of an old truck, it is a matter of common knowledge that the market price of trucks depreciates rapidly by use. Counsel for defendant insists that the jury was entitled to take into consideration the item of interest. This would indisputably be sufficient to supply any deficiency in the partial amount of the verdict unsupported by other proper evidence. In the instruction offered at the instance of the plaintiff the matter of interest was not named as an element to be taken into consideration by the jury in the assessment of damages. This instruction purported to set out all proper elements to be considered. Hence, it is improbable that the jury gave any consideration to the item of interest.

We are not unmindful of the authorities cited by learned counsel for the plaintiff to the effect that the assessment of damages is peculiarly the province of the jury. This case, however, does not fall within the rule where it must be manifest that the jury were influenced by passion or prejudice in its deliberation, and as a result thereof awarded excessive damages. A study of results reached in the reported cases justify the statement that the court generally grants relief if convinced that the verdict substantially exceeds or falls below any rational appraisal or estimate of the damages, though the action of the jury be not brought about by passion or prejudice but by mistake or misapprehension on their part. Parmale's Damage Verdicts, Vol. 1, p. 8. The jury should not assess damages according to their fancy, or base them upon visionary estimates, probabilities or chances. The verdict must be based upon facts proven and reasonable deductions therefrom. The plaintiff made no offer to file a remittitur. The trial court expressed its inability to determine the amount that the plaintiff was entitled to recover, according to the evidence proper to be considered, without assuming the functions of a jury and substituting its judgment for theirs. In such case we have held it was warranted

in setting aside the verdict and awarding a new trial. *Thompson* v. *Collier Co.*, 104 W. Va. 493. The trial court's opinion in such case is entitled to peculiar respect, and this Court will not reverse its order unless it is plainly wrong. The general rule is that it takes a stronger case, in an appellate court, to reverse an order granting, than one refusing a new trial. *Willson* v. *Ice*, 78 W. Va. 672; *Varney* v. *Hutchinson Lumber Co.*, 64 W. Va. 417; *Reynolds* v. *Thompkins*, 23 W. Va. 229. The reason of the rule is that, in the former case, the only legitimate result is another trial in the cause, at which it is presumed that justice will be done, as near as may be; and in the latter, if the refusal be affirmed, generally, the losing party is left without remedy for relief, no matter how great the injustice done him. An application of the foregoing principles leads us to affirm the action of the trial court on this phase of the case. What our judgment would have been had the court below denied a new trial, we are not called upon to say. But, upon the whole case presented, considering the testimony therein which is susceptible of a contrariety of interpretation, we cannot say that there has been any abuse of the discretion of the court in awarding a new trial.

Since a new trial is to be had, a consideration of other points of error raised on the record, is made necessary. Counsel for defendant on the argument waived cross-assignments of error made in his brief, as to the action of the court in refusing certain instructions requested by the defendant. Aside from instruction 9-A already discussed, his remaining objections go to the giving of all the other instructions for the plaintiff. In these, with one exception, we find no serious error. Instruction 9-B violates a fundamental principle of practice in stating an abstract principle of law without making any application to the facts. It was improperly given.

*Judgment affirmed.*