Betty Sargent, an Infant, Who Sues by Jay Sargent, Her Next Friend, and Jay Sargent

*v.*

O. M. Malcomb

(No. 12455)

Submitted January 25, 1966.    Decided February 8, 1966.

*Frank C. Mascara, Ross Maruka,* for appellants.

*William L. Fury, Lycurgus Hyre,* for appellee.

Calhoun, Judge:

This case is before the Court on appeal from an order of the Circuit Court of Upshur County entered on June 13, 1964, in a civil action in which Betty Sargent, an infant, suing by Jay Sargent, as her next friend, sought recovery of damages for personal injuries resulting from burns sustained by her while she was employed in a restaurant operated by the defendant, O. M. Malcomb, in the City of Buckhannon. In the same action, Jay Sargent, in his own right,

sought recovery from the defendant for hospital and doctor bills which were incurred by him in the treatment of his infant daughter as a consequence of the personal injuries she sustained.

Upon a trial of the case, the jury returned a verdict in favor of Betty Sargent in the sum of $22,500 and a separate verdict in favor of her father, Jay Sargent, in the sum of $935.61. The plaintiffs have appealed from the action of the trial court in setting aside the verdicts and in awarding the defendant a new trial.

The basic question presented for decision on this appeal is whether the trial court properly held that the verdict of $22,500 in favor of the infant plaintiff is excessive.

Numerous alleged errors were asserted in the trial court in the amended motion of the defendant to set aside the verdicts and to grant a new trial. In connection with his ruling upon the motion, the trial judge filed a written opinion which, by a court order, was made a part of the record. In such circumstances, we are authorized to consider the written opinion in order to determine the basis of the trial court's judgment. *Rollins* v. *Daraban,* 145 W. Va. 178, pt. 2 syl., 113 S. E. 2d 369; *Barnett* v. *Wolfolk,* 149 W. Va. 246, 140 S. E. 2d 466, 469; *Work* v. *Rogerson,* 149 W. Va. 493, pt. 2 syl., 142 S. E. 2d 188; *Boggs* v. *Settle,* 150 W. Va. 330, 145 S. E. 2d 446, 448.

The trial court's written opinion states that a new trial "to all parties and on all issues should be granted on the ground of the excessiveness of the verdicts regardless of the merits of the other grounds upon which said motion for a new trial is based." It appears from the written opinion that the trial court determined that the verdict for $22,500 was "plainly and grossly excessive" and that, for that reason, both verdicts should be set aside. The trial court did not rule upon any other assignments of error. Neither the written opinion nor the court order indicates that the trial court's order in awarding a new trial was based on any ground other than the excessiveness of the verdicts, particularly the verdict in favor of the infant plaintiff. No

cross-assignment of error has been made in behalf of the defendant. See *Payne* v. *Kinder,* 147 W. Va. 352, 127 S. E. 2d 726. In this Court counsel for the respective parties, in their briefs, and oral arguments, have urged no ground for affirming or reversing the order of the trial court except on the basis of the alleged excessiveness of the verdicts.

During the trial, no objection was made to the doctor and hospital bills. It was stipulated by counsel that such bills, aggregating the sum of $935,61, were reasonable in their amounts and that they were necessarily incurred in the treatment of the patient. The verdict in favor of Jay Sargent was for $935.61. The question of excessiveness, therefore, relates directly to the verdict for $22,500 in favor of the infant plaintiff.

This Court has recognized that it requires a stronger case in an appellate court to reverse a judgment awarding a new trial than a judgment denying a new trial. *Graham* v. *Wriston,* 146 W. Va. 484, pt. 3 syl., 120 S. E. 2d 713. On the other hand, it is clear that the judgment of the trial court in awarding a new trial should be reversed if it is in that respect clearly wrong or if a consideration of the evidence shows that the case was a proper one for jury determination. *Rollins* v. *Daraban,* 145 W. Va. 178, pt. 6 syl., 113 S. E. 2d 369; *Reese* v. *Lowry,* 140 W. Va. 772, pt. 4 syl., 86 S. E. 2d 381; *Henderson* v. *Hazlett,* 75 W. Va. 255, 83 S. E. 907. This Court has affirmed the actions of trial courts in awarding new trials on the ground of excessiveness of verdicts where the verdicts were clearly excessive or where the evidence in relation to that question was doubtful. *Browning* v. *Monongahela Transportation Co.,* 126 W. Va. 195, 27 S. E. 2d 481; *Pittsburgh-Wheeling Coal Co.* v. *Wheeling Public Service Co.,* 106 W. Va. 206, pt. 1 syl., 145 S. E. 272; *Cain* v. *Kanawha Traction & Electric Co.,* 81 W. Va. 631, pt. 4 syl., 95 S. E. 88; *Corns-Thomas Engineering & Construction Co.* v. *McDowell County Court,* 92 W. Va. 368, pt. 11 syl., 115 S. E. 462; *Adkinson* v. *Baltimore & Ohio Railroad Co.,* 75 W. Va. 156, pt. 3 syl., 83 S. E. 291. Even in a case in which the damages recoverable are indeterminate in character, this Court will reverse the action of the trial court in refusing

to set aside the verdict on the ground of excessiveness where the verdict is clearly in excess of the amount which the evidence shows the plaintiff is entitled to recover. *Winters* v. *Campbell*, 148 W. Va. 710, pt. 5 syl., 137 S. E. 2d 188. This Court, in a personal injury case, will reverse the judgment of the trial court in setting aside a verdict on the ground of excessiveness, reinstate the verdict and enter judgment on the verdict in this Court, if it appears that the action of the trial court in setting aside the verdict was not justified. *Reese* v. *Lowry*, 140 W. Va. 772, 86 S. E. 2d 381.

A well-settled legal principle, binding both on the trial court and this Court, is that in an action in which the compensation which the plaintiff is entitled to recover is indeterminate in character, the verdict of the jury may not be set aside as excessive unless it is not supported by the evidence or is so large that the amount thereof indicates that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case. *Poe* v. *Pittman*, 150 W. Va. 179, pt. 7 syl., 144 S. E. 2d 671. In such a case a mere difference of opinion between the court and the trial jury concerning the proper amount of recovery will not justify either the trial court or this Court in setting aside the verdict on the ground of·inadequacy or excessiveness. *Earl T. Browder* v. *County Court of Webster County*, 145 W. Va. 696, pt. 5 syl., 116 S. E. 2d 867.

Another well-settled legal principle binding both on the trial court and the appellate court, is that, in determining whether a jury verdict is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned must be considered, and all facts which the jury might properly have found from the evidence must be assumed as true. *Bolling* v. *Clay*, 150 W. Va. 249, pt. 1 syl., 144 S. E. 2d 682; *Poe* v. *Pittman*, 150 W. Va. 179, pt. 5 syl., 144 S. E. 2d 671; *Walker* v. *Monongahela Power Co.*, 147 W. Va. 825, pt. 3 syl., 131 S. E. 2d 736; *Bower* v. *Brannon*, 141 W. Va. 435, 440, 90 S. E. 2d 342, 346; *Butcher* v. *Stull*, 140 W. Va. 31, pt. 1 syl., 82 S. E. 2d 278.

In the light of the authorities previously referred to in this opinion, we believe we are required, in considering the question of the alleged excessiveness of the verdict for $22,500, to determine whether the verdict is one which the jury might properly have found from the evidence bearing on that question. Only witnesses for the plaintiffs testified concerning the nature and extent of the personal injuries sustained by Betty Sargent. No testimony of this character was adduced in behalf of the defendant. There is no substantial dispute, therefore, in the testimony bearing directly on the issue of the alleged excessiveness of the verdict in her favor.

On January 12, 1962, Betty Sargent entered a hospital in Buckhannon where she remained as a patient continuously until February 17, a total of thirty-six days. The testimony discloses some uncertainty on the question whether the date of her initial discharge from the hospital was February 7 or February 17, but both a hospital bill and a doctor's bill which were introduced in evidence indicate that the latter of the two dates is correct.

Dr. R. L. Chamberlain, a physician residing at Buckhannon, testified that he was called to see Betty Sargent in the emergency room of the hospital on January 12; that she was then suffering from burns "all up and down her back," on both buttocks, on her left breast, under her left arm, in the left armpit, and on her left leg; that all of the burns were either of the second degree or third degree; that, in connection with his initial treatment of the patient, she was given an injection for pain, skin which was obviously dead and destroyed was removed with surgical scissors and all burned skin which appeared likely to respond to treatment was treated with appropriate medications; that the first thing he did was to give the patient morphine; that pain remedies were given thereafter; that fluids were given intravenously from time to time because of the seepage of fluids through the raw tissues; that bandages were changed and ointment was reapplied at proper intervals; that the patient suffered pain throughout this initial period of hospitalization; that second degree burns are particularly painful; that the

squeezing of nerves by the scar tissue in such cases is painful; that, after the patient was initially discharged from the hospital to remain at her home as an outpatient, she returned to the hospital for treatment of the burns at intervals of approximately six days; that some of the burned areas were slow in healing and that in these circumstances Dr. Basil Page, a surgeon of Buckhannon, suggested skin grafting.

The patient returned to the hospital on March 19 for further treatment, particularly for skin grafting, and remained as a patient in the hospital until April 8, or a total of twenty days on this second occasion. Apparently, therefore, the patient's injuries required hospitalization for a total of fifty-six days.

Dr. Chamberlain described the skin grafting procedure in this case as "pinch graft," by which procedure many circular pieces of skin, averaging about a quarter of an inch in diameter, were removed from healthy sites on the patient's body and applied in rows to the raw areas created by the burns until such raw areas were covered and thereafter such areas were protected by bandages. He testified further that a patient is anesthetized and, therefore, suffers no particular pain during the skin grafting procedure, but that the patient later experiences soreness in the areas from which healthy skin has been removed; that the process of transplanting such circular pieces of skin is similar to planting seeds in that only about fifty percent of the transplants are effective and successful; that small rows of scars result from the removal of the circular pieces of healthy skin; that "not all the grafts grew, and of course each site that did grow new skin grew out from that area, but she continued to have dressings about every week or two until healing was complete on August 10, which was the last I felt she needed treatment;" and that the patient suffered pain throughout the period from January 12, when the burns were sustained, until August 10, though the pain diminished as improvement occurred.

In relation to the resulting scars on the patient's body, Dr. Chamberlain testified: "The scarring in the more extensive areas, the areas partly grafted, left upper arm and the armpit and the left lower thigh, are pretty extensive. They are quite extensive and deep and thick. All the other areas involved are scarred but to a much less extent." The witness testified that he knew of no medical or surgical means of correcting or eliminating the scars. He did not deem himself qualified to express an opinion whether plastic surgery would be helpful in that respect. When asked about the emotional or mental reactions of the patient as a result of the burns, the doctor testified that she was naturally apprehensive and anxious during the entire course of treatment and that pain "is wearing and tearing to a person's system." The testimony discloses without contradiction that an offensive odor resulted from the patient's burns. In her testimony, Betty Sargent described the odor as "a rotten smell." She stated that the odor continued until the burns healed about the first of September.

Ivy Sargent, mother of Betty Sargent, testified concerning the scars which resulted from the burns. She testified further that her daughter, as a result of the burns, "just seems like she is tired," and is unable to work as she did before she was injured. She also testified concerning the offensive odor which resulted from the burns and that such odor continued throughout the periods of her daughter's stays in the hospital and until September.

Jay Sargent testified concerning the unpleasant odor which resulted from the burns; that his daughter does not seem to be as active as before; and that he notices that "she hobbles when she goes across the floor."

Betty Sargent testified that, "about in May," the burns "quit hurting so bad;" but that she was in constant pain until that time; that she was not working at the time she testified on May 8, 1964, because she was not able to work; that she gets tired readily when she walks; that "if I use my arm much it tires easy, and I can't walk much on my leg;" and that her left breast, as a result of the injury, is bumpy, scarred and, where it was burned, it is "kind of flat."

At the suggestion of her counsel during the trial and by permission of the court, Betty Sargent retired from the courtroom in order to attire herself in such a way that, upon her return to the courtroom, she was able to exhibit to the jury some of the scars on her body. Spectators were excluded from the courtroom while the scars were being exhibited to the jury. Two photographs introduced in evidence and made a part of the printed record in this Court give evidence of the unsightly scars in the areas of the left breast, the left armpit and the left arm between the elbow and the armpit. While the photographs do not show the scars on other parts of her body, she testified that the burned area "in and about the leg" is "rough and scarred."

The photographs indicate that Betty Sargent is an attractive girl. She was slightly less than sixteen years of age when she commenced working in the defendant's restaurant, seventeen when the accident occurred and nineteen at the time of the trial. She testified that because of the scars on her left leg, she no longer wears shorts as she did before the accident, except at home; and that she now wears sleeveless dresses only once in a while.

In recent cases the Court has reviewed its prior decisions relative to allegedly excessive verdicts in actions to recover damages for personal injuries. *Yuncke v. Welker*, 128 W. Va. 299, 36 S. E. 2d 410; *French v. Sinkford*, 132 W. Va. 66, 54 S. E. 2d 38; *Williams v. Penn Line Service, Inc., et al.*, 147 W. Va. 195, 126 S. E. 2d 384; *Poe v. Pittman et al.*, 150 W. Va. 179, 144 S. E. 2d 671. While legal principles applicable to such cases are fairly well settled, difficulties arise in their application to factual situations. There is no exact formula or standard for placing a money value on such matters as pain, suffering and mental anguish resulting from personal injuries or embarrassment resulting from bodily disfigurement or scars. The law recognizes that the aggregate judgment of twelve duly selected and properly qualified jurors represents the best method yet devised for fixing the amount of just compensation to the injured plaintiffs in such cases.

A jury verdict in a personal injury case may not be set aside as excessive by the trial court merely because the award of damages is greater than the trial judge would have made if he had been charged with the responsibility of determining the proper amount of the award. This Court cannot set aside a verdict as excessive in such a case merely because a majority or all members of the Court would have made an award of a lesser amount if initially charged with the responsibility of determining the proper amount of the award. In *Webb* v. *Brown & Williamson Tobacco Co.*, 121 W. Va. 115, 122, 2 S. E. 2d 898, 901, the Court stated: "The court is unanimous in the view that the verdict is probably excessive; but a majority is of the opinion that, in view of the well known rule that the verdict of a jury will not be disturbed except where it plainly appears to have resulted from mistake, partiality, passion, prejudice or lack of due consideration, the excess finding is not such as would warrant a reversal of the judgment and a setting aside of the verdict on that ground." In *Armstead* v. *Holbert*, 146 W. Va. 582, 587, 122 S. E. 2d 43, 46-47, the Court stated: "However, a majority of the Judges of this Court are in agreement with the circuit court that while ' * * * the verdict was probably too large, * * *' it could not be said to be excessive as a matter of law and would not be set aside upon the ground of excessiveness alone."

The distinguished trial judge believed that the verdict for $22,500 in favor of Betty Sargent was excessive and that partiality or prejudice on the part of the jury was evidenced by the fact that the jury initially returned a verdict for $1,500 in favor of Jay Sargent, notwithstanding the fact that in an instruction given in behalf of the plaintiffs the court had told the jury that it could not return a verdict for Jay Sargent in excess of $935.61. Dr. Chamberlain testified that, even if plastic surgery were undertaken for the benefit of Betty Sargent, his conservative estimate was that it would cost from $500 to $1,000. It may be that this testimony influenced the jury in returning the original verdict for $1,500 in favor of Jay Sargent. Notwithstanding this action on the part of the jury, we are unable to say as a matter of law

that the verdict for $22,500 in favor of Betty Sargent is excessive.

For reasons stated in this opinion, the order of the Circuit Court of Upshur County in setting aside the verdicts and awarding the defendant a new trial is reversed. In such circumstances, the verdicts will be reinstated and judgments will be rendered thereon in this Court. "In the case of an appeal from an order granting a new trial or rehearing, if the order be reversed, such final judgment, decree or order shall be rendered or made in the case as the appellant was entitled to in the court below." Code, 1931, 58-5-25. See also *Bronson, Executor* v. *Riffe,* 148 W. Va. 362, pt. 4 syl., 135 S. E. 2d 244; *Brace* v. *Salem Cold Storage, Inc.,* 146 W. Va. 180, pt. 7 syl., 118 S. E. 2d 799, 92 A.L.R. 2d 1287.

> *Reversed;*
> *verdicts for plaintiffs reinstated;*
> *judgments rendered in this Court.*