# CHARLESTON.

## DUTY v. CHESAPEAKE & OHIO RAILWAY COMPANY.

Submitted January 17, 1911.   Decided November 28, 1911.

1.  APPEAL AND ERROR—*Review—Harmless Error—Ruling on Pleading.*

    If the good count or counts of a declaration, and the evidence thereunder be sufficient to support the verdict, the judgment thereon will not be vitiated by the error of the trial court, if any, in overruling the demurrer to a bad count, when it clearly appears that the defendant has not been prejudiced thereby. (p. 16).

2.  CARRIERS—*Injuries to Passengers—Pleading.*

    The first count of the declaration in this case, though omitting to allege, as did the second, that defendant failed to stop its train at the station where plaintiff offered herself as a passenger, and was injured, for a sufficient length of time to enable her to get aboard, and to a place of safety, held good on demurrer. (p. 16).

3.  PARTIES—*Amendment—Statutory Provision.*

    Where there are two corporations of the same name, one created under the laws of one state, the other of another, but the corporation intended to be sued, has in fact been sued, and duly served with process, but on the trial plaintiff discovers that in one count of his declaration he has erroneously alleged the wrong state under the laws of which defendant was incorporated, it is not error for the trial court, after non-suit suffered, and set aside, on his motion, to permit plaintiff to amend his declaration by striking out the erroneous allegation. Such an amendment is authorized by section 14, chapter 125, Code 1906. (p. 18).

4.  PLEADING—*Amendment—New Cause of Action.*

    Such an amendment is not the introduction of new cause of action against the defendant actually sued. (p. 19).

5.  LIMITATION OF ACTIONS—*Computation    of    Limitations—Commencement of Action—Amendment of Pleading.*

    Nor will a non-suit thus suffered and set aside, amount to a voluntary abandonment or discontinuance of the old suit, and the beginning of a new action, so as to entitle defendant to have its plea of the statute of limitations applied to the date of the

amendment, and not to the date of the writ commencing the suit. Section 12, chapter 127, and section 19, chapter 104, Code 1906, are decisive kof this point. (p. 19).

6. TRIAL—*Opinion Evidence—Effect.*

The verdict for the plaintiff is not contrary to the overwhelming weight and preponderance of the evidence. (p. 21).

7. CARRIERS—*Injuries to Passengers—Questions for Jury.*

The questions of the manner in which plaintiff sustained her injuries; the reasonableness of the stop made at defendant's railway station; whether plaintiff was attempting to board a moving train at the time of her injuries, and whether defendant was guilty of negligence in not seeing her and seeing that she got on the train, and to a place of safety, before giving the signals to go ahead, all depended on conflicting evidence and attendant circumstances, and were properly submitted to the jury. (pp. 21-2).

8. SAME—*Injuries to Passengers—Taking Up Passengers.*

It is actionable negligence for a conductor or other servant of a railroad company to start a train while passengers are obviously in the act of getting on it, or alighting therefrom. (p. 24).

9. TRIAL—*Instructions—Requests—Instructions Already Given.*

It is not error to reject instructions the subject of which has been substantially covered by other instructions given. (p. 25).

10. NEW TRIAL—*Appeal and Error—Newly Discovered Evidence—Discretion of Trial Court.*

If the affidavits on which a motion for a new trial for after discovered evidence is based, are rebutted by counter affidavits, it is for the court below exercising a sound judicial discretion to say whether a new trial should be granted, and its judgment should not be disturbed, except for plain abuse of that discretion. (p. 25).

Error to Circuit Court, Cabell County.

Action by Amanda S. Duty against the Chesapeake & Ohio Railway Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Simms, Enslow, Fitzpatrick & Baker* for plaintiff in error.

*Marcum & Marcum,* for defendant in error.

MILLER, JUDGE:

Defendant by writ of error seeks reversal of the judgment below against it for five thousand dollars, damages for injuries alleged to have been sustained by plaintiff while a passenger, at West Hamlin, in Lincoln county, on the night of September 24, 1907.

The first point of error is the overruling of the demurrer to the amended declaration and to each count thereof. This declaration contains two counts. The second count, among other things, avers the duty and the breach thereof by defendant to stop its train at its said station, on the night in question, a reasonable length of time to enable plaintiff to get aboard and to reach a place of safety. This count is concededly good, but it is insisted that the first count, which omits this averment, but which avers other duties of defendant to plaintiff, and the willful, wanton, reckless, and negligent disregard thereof, resulting in the injuries complained of, is nevertheless fatally bad, demanding reversal of the judgment and that a new trial should be awarded.

The law on this subject, however, is that if the good count and the evidence thereunder, be sufficient to sustain the verdict and judgment, the error, if any, in not, on demurrer, suppressing the bad count, will be disregarded by an appellate court, if it clearly appears that the action of the court on the bad count and the evidence, if any, admitted thereunder, has not resulted in an excessive verdict, or that the defendant has not been otherwise prejudiced thereby, this upon the same principle that where there is but one count, which contains good and bad matter, and a general demurrer thereto is properly overruled, the bad will not after verdict vitiate the good, unless prejudice due to the bad matter and evidence thereunder has resulted to the defendant. *Robrecht* v. *Marling*, 29 W. Va. 765, 773, and cases cited; 6 Ency. Pl. & Prac. 367, citing, at page 368, numerous Alabama and Indiana decisions, sustaining the proposition.

But is the first count bad for omitting the alleged primary and paramount averment? It avers facts sufficient to establish the relationship of passenger and carrier; the duty of defendant thereafter to use all due and proper care, caution, skill and diligence in and about the operation and movement of its locomotives, engines, cars, coaches and trains and so forth, so as to

prevent and avoid all hurts, injuries, accidents, and dangers to plaintiff, and to carry her safely and securely to destination; the disregard of those duties, in that while at the instance and request of defendant, she was attempting to board the defendant's regular passenger train and the car or coach thereof at said station, to be carried safely to destination, and while said train was standing motionless, and while she in the exercise of all due and proper care and diligence for her own safety and security, the defendant, its officers, agents and servants, without ring of bell, blow of whistle, or giving the usual and customary warnings and signals, or warning or signal of any kind, whatsoever, wantonly, recklessly, carelessly, and negligently caused said train and the car or coach whereon plaintiff was then and there in the act of boarding, to be suddenly and quickly and without warning started and jerked forward and whereby she was then and there hurled and thrown with great force and violence from the platform and from the step of the car or coach which she was then and there in the act of boarding, as aforesaid, resulting in the injuries of which she complains. Does this state a good cause of action? It is insisted that it does not, for the reason noted.

To sustain this proposition *Snyder* v. *Wheeling Electrical Co.*, 43 W. Va. 661 is mainly relied on. We do not think this case supports the contention of counsel; quite the contrary. If in disregard of its alleged duties defendant, as this count avers, while plaintiff was in the act of boarding the train, without notice as alleged, wantonly, recklessly, carelessly and negligently caused its train and coach in which, in the exercise of due and proper care and diligence, she was so attempting to enter, to be suddenly started and jerked forward, causing her injuries, it was guilty of actionable negligence. The count states with reasonable certainty the main or primary acts of omission and commission doing the damage, within the rule of the case cited, namely the duty of defendant, while plaintiff was so in the act of boarding its train not to so wantonly, recklessly and carelessly and negligently move its train so as to injure her. Whether or not defendant did so offend might, on the trial, depend on whether a stop of sufficient length was made, and whether defendant's servants saw or reasonably ought to have seen plaintiff in her place of danger when giving the signal to go ahead, but the want

of averment of that fact did not in our judgment render the count bad on demurrer.

But even if the count be bad, we can plainly see, the second count being concededly good, that defendant was not prejudiced by the action of the court on the first count, and that the judgment ought not to be reversed for any error therein. No evidence was admitted under the first count, not admissible under the second, and nothing could have been added by way of damages under the first count not provable under the second count, wherefore defendant could not have been prejudiced.

The next point is that the court erroneously permitted plaintiff to withdraw a juror, and on a non-suit suffered, but set aside the same day on her motion, to amend her declaration by striking out of the first count the words, "State of West Virginia," descriptive of the corporation sued, leaving the corporate name as described in the writ executed upon the defendant company, and as described in the second count, Chesapeake and Ohio Railway Company, a corporation. It is insisted that although the Chesapeake & Ohio Railway Company, a corporation under the laws of the State of Virginia, was in fact the corporation sued, and intended to be sued, and the one served with process, the error of description in the first count, committed plaintiff to the West Virginia corporation, and that she could not of right amend her declaration, as she was permitted to do, without suffering the consequences of a new suit brought as of the date of the filing of the amended declaration, and to which the statute of limitations interposed by the defendant, the Virginia corporation, could be properly pleaded; also that the amendment permitted was equivalent to stating a new cause of action to which the statute of limitation might also be properly applied. The evidence relied on by defendant in the court below in support of its motion to strike out the amended declaration, shows, we think, that neither the words "State of West Virginia," stricken out, nor the words "State of Virginia" constitute any part or parts of the corporate names of either of these corporations. . Each corporation has the same corporate name, the one sued being organized under the laws of Virginia, the other under the laws of West Virginia, the latter not being the owner or operator of the railroad at the time plaintiff is alleged to have sustained her injuries. If we should treat the words "State of West Virginia" as part of the

corporate name, and a misnomer, the right corporation having been sued and served with process, the variance would not be fatal; nor, by section 14, chapter 125, Code 1906, the proper subject of a plea in abatement. Under that section the declaration would be amendable on mere motion of either party. *Bank* v. *Distilling Co.,* 41 W. Va. 530; *Grocery Co.* v. *Brewing Co.,* 60 W. Va. 281; *Stout* v. *B. & O. R. R. Co.,* 64 W. Va. 502.

The other argument based on the theory of a new cause of action introduced by the amendment is, in our opinion, wholly untenable. The cause of action is the same in both pleadings. Defendant knew it was the corporation sued, intended to be sued, and described in the writ, and that it was properly served with this writ. It is true perhaps, as a general rule, as decided in the cases cited, that the introduction by way of amendment of a new and distinct cause of action, will not prevent the running of the statute of limitations, except from the date of such amendment; but we have no such case here. This is not a case where by amendment a different party has been substituted for the defendant actually sued; but one in which the name of the party actually sued and served with process has been corrected. Such a case is clearly within our statute, and the decisions cited, and within the rule of *Mill Co.* v. *Hobdy,* (Ala.) 51 So. 871, one of the cases relied on by defendant.

But was a new cause of action begun by the amendment and non-suit suffered and set aside, to which the statute of limitations could properly be applied? In affirmance of this proposition, counsel rely on the Virginia cases of *Manuel* v. *N. & W. Ry. Co.,* (Va.) 37 S. E. 957, and *Wickham* v. *Green,* (Va.) 68 S. E. 259, construing the statute of that state, the first, a new suit, brought after a non-suit voluntarily suffered, but not set aside; the second a suit dismissed by the clerk at rules for want of pleadings, and reinstated on motion at the subsequent term of the court. In both cases the actions were held to be barred. These decisions were rested on the statute of Virginia, corresponding to section 19, chapter 104, Code 1906, of this state. In *Tompkins,* v. *Ins. Co.,* 53 W. Va. 479, 484, the difference between our broader and more comprehensive statute, and the statute of Virginia, and the statutes of some other states, is distinctly noted, and the Virginia decisions cited are regarded as uncontrolling. *Lawrence* v. *Coal Co.,* 48 W. Va. 139, distinguished in *Tompkins* v.

*Ins. Co., supra,* involved a voluntary abandonment of the first suit, after dismissal at rules, and new suit subsequently brought. In the recent case of *Ryan* v. *Piney Coal & Coke Co.,* 69 W. Va. 692, we had occasion, in construing our statute, to review our former decisions on the subject. We held the statute broad enough in its application to cover the case of a new suit brought after a former one dismissed for variance between the writ and declaration, and refusal of the court to allow an amendment.

But why need we further pursue this question? Our statute, section 12, chapter 127, Code 1906, originating with chapter 132, Acts 1868, unlike any statute of Virginia,, specifically provides, that all causes in which orders of dismissal or orders of non-suit have been set aside, and the same re-instated,"shall remain upon the docket, and be proceeded with in the same manner as if the order had never been made." True this statute says "in' the same manner;" but rightly interpreted it clearly means with all the rights preserved the same as if a non-suit had never been suffered. The statute is remedial, and is entitled, under well known canons, to liberal construction, and read in the light of section 19, chapter 104, Code 1906, another remedial statute, it should be given the construction indicated.

The next point is that over the defendant's objection, the court below admitted improper evidence. This point is made with respect to the whole of the evidence of Doctors Solter and Turner, motion to exclude which it is claimed was overruled. If such motion was ever made we have been unable to find it in the record. Attention is not directed to any particular portion or portions of this evidence which in the judgment of counsel ought to have been excluded. The generality of the objection does not require us to give it consideration. But counsel say that the motion to exclude, which we fail to find in the record, should have been sustained on the rules and principles of *C. & O. Ry Co.* v. *Wiley,* 121 S. W. 402; *McKormick* v. *West Bay City,* 110 Mich. 265, and *Comstock* v. *Township of Georgetown,* 137 Mich. 541. The particular rules of these cases supposed to have been violated by the alleged action of the court, are not pointed out. We are left in the dark, as the court below evidently was, if such motion was made, justifying it in denying the motion. We have read the evidence of these witnesses with reference to the au-

thorities cited, and we can see no substantial infraction of the rules of evidence enunciated in those cases. The evidence relates mainly to the treatment of the plaintiff by these witnesses, from the time of her supposed injuries, the history, symptoms, and progress of her disease and their opinions based thereon, as to its cause. One rule of *McKormick* v. *West Bay City,* which may possibly have been in the mind of counsel, is that where a physician is called to examine a plaintiff in an action for personal injuries, for the express purpose of giving testimony, his voluntary exclamations of pain and the like are incompetent evidence; but no such case is presented by the evidence of these witnesses. Much of the evidence went in without objection by defendant's counsel. We perceive no substantial error in its admission.

Next, it is said that the evidence of the plaintiff is overborne and buried under the proponderating evidence of the defendant, and that on this ground, notwithstanding the conflict, the court below, as proposed by defendant's instruction number 1, should have directed a verdict for it, and after verdict should have set the same aside on its motion to award a new trial. This point is directed to two distinct portions of the evidence: First, it is claimed that the evidence of plaintiff's witnesses, doctors Turner and Solter, relatng to the nature of plaintiff's injuries, the causes, and results, and particularly their opinion, at the time of the trial, that she was suffering from *locomotor ataxia,* was completely demolished and overridden by the evidence of some six other physicians, most, if not all, of them employees of the defendant, and who had never treated plaintiff, or made any physical examination of her or her injuries, but gave it as their opinion, based on the evidence of the plaintiff's witnesses, and what they had seen of plaintiff at the trial, that she was not then suffering from *locomotor ataxia.* We are unable to agree with counsel. True there is conflict, but it was for the jury, and not for the court to judge of its weight and credibility; the number of witnesses is not controling. Defendant's witnesses, as they admit, had never had the opportunity to examine or treat plaintiff, as plaintiff's witnesses had done, and they did not attempt to speak with the same personal knowledge or accuracy as doctors Turner and Solter.

The other class of evidence to which counsel would apply their

theory of overwhelming preponderance is: (a), that relating
to the manner in which plaintiff's alleged injuries were received;
(b), that relating to the reasonableness of stop made at West
Hamlin on the night in question, and (c) that relating to defend-
ant's claim that plaintiff attempted to get aboard the train while
it was in motion, and thereby contributed to her injuries, depriv-
ing her of right of recovery. It is conceded that the (a) class of
evidence is conflicting. It might reasonably be said to be one
sided, for defendant's witnesses profess not to have seen plaintiff
as she was attempting to board the train. Plaintiff, her hus-
band and another witness all agree, that these injuries were sus-
tained substantially as alleged in the declaration. We need not
further consider this point.

Next, as to the evidence relating to the reasonableness of the
stop, and that relating to contributory negligence. It is in-
sisted that this case is clearly controlled by *Hoylman* v. *Kanawha
& Michigan Ry. Co.*, 65 W. Va. 264, and the rules and principles
of *Louisville, H. & St. L. Ry. Co.* v. *Coons*, 25 Ky. L. Rep. 509;
.*C. B. & Q. R. R Co.* v. *Landauer*, 36 Neb. 642; *C. B. & Q. R. Co.*
v. *Lampman*, 104 Pac. 533; *Hurt* v. *St. L., I. M. & S. Ry. Co.*,
94 Mo. 255; *Raben* v. *Central Iowa Ry. Co.*, 73 Iowa 579; *Pa.
R. R. Co.* v. *Kilgore*, 32 Pa. 292, and *Shealey* v. *S. C. & G. Ry.
Co.*, 67 S. C. 61. We do not think the *Hoylman Case* controls
this one. In that case there was no conflict in the evidence as
to the reasonableness of the stop, or as to the negligence of Por-
ter who was killed. In this case there is conflicting evidence;
the witnesses for the defendant do not agree as to the exact
length of the stop, except in saying that it was longer than usual.
But the train was about two hours late at West Hamlin; it was
of unusual length, being composed of some eight coaches, in-
cluding the baggage coach, and heavily loaded with passengers
returning from a circus at Huntington that day, and an unusual
number got off at West Hamlin. Plaintiff and her husband with
six small children were destined for Big Creek, a station east of
West Hamlin. Both testify, and they are not contradicted, that
they had been waiting for a long time for the belated train, and
that as soon as the train whistled for the station, they went out
promptly, and on its arrival at the station presented themselves
at the place between the smoking car and the coach immediately
in the rear of it, where passengers for that station were alight-

ing, near the lower end of the platform, each carrying one of the smaller children, and directing the others; that as soon as the passengers for that station had alighted, they proceeded at once to get aboard, the husband with one child in his arms, and one or two of the other children going in first, and who succeeded in getting up on the platform and into the coach, the wife and plaintiff with the child in her arms, and the other children following closely behind. Plaintiff testifies and she is corroborated by her husband and her witness Wilkinson, present, that while she was in the act of getting on the train with her right foot on the lower step, and holding on to the hand rail with her released hand, the train and the car on which she was then standing, without warning or signal, gave a lurch forward, jerking her loose and backwards against the car, throwing her to the ground. These witnesses distinctly say that the train was not in motion when Mrs. Duty thus attempted to get on the train, and that she and her husband started right on the train, as soon as the passengers for West Hamlin got off. The evidence of defendant relied on is that of the two conductors and the brakeman in charge of the train. Conductor Cowherd in charge of the three front coaches, was standing up on the front platform of the smoking car, between it and the baggage car, and concededly was not in a position to see plaintiff with her husband and children attempting to board the train. The brakeman claims to have been standing on the station platform, about opposite Conductor Cowherd, or about midway of the smoking car, as to which the evidence is not very clear; but he does not appear to have been giving attention to the passengers getting off and on the train where plaintiff was attempting to get on. Armstrong the conductor in charge of the rear coaches testifies that after he got the passengers off his coaches, which stood far back from the station, opposite freight cars on another track, he walked forward; that he could see Walker, the brakeman, but did not see plaintiff and her children attempting to get aboard the train; and Walker the brakeman professes to have seen Armstrong, and both profess to have had a full view along the entire length of the train; yet both say they did not see plaintiff and her husband with their large family in the act of getting aboard when giving the signals to go ahead. It was dark and the trainmen had their lanterns; but if Armstrong and Walker could see each other

it seems almost incredible that they did not see or could not while looking along the train, as they profess to have been, have plainly seen this family in the act of getting on the train. Whether they could or did, and whether a sufficient stop was made, and whether plaintiff attempted to get on the train after it started, were, we think, under all the evidence in the case, peculiarly questions of fact for jury decision.

Most, if not all, the cases cited and relied on by counsel for defendant, were actions for damages sustained by passengers while alighting from trains in motion, after reasonable stops made, where, as in our case of *Hoylman* v. *Railway Co., supra,* the rule is, that the carrier will not be liable unless the circumstances indicate or cause the trainmen to suspect, in the exercise of reasonable diligence, that a passenger has not reached a place of safety, so as to be in danger if the train is started. The rule perhaps would not be different, as indicated in the *Hoylman Case,* in actions for damages for injuries sustained while attempting to get on moving trains. The rule is clearly stated in 5 Am. & Eng. Ency. Law, 578, one of the authorities cited and relied upon by defendant's counsel, as follows: "It is universally held to be negligence for the conductor or other servant of a railroad company to start a train while passengers are obviously in the act of getting on the train or alighting therefrom." The numerous decisions cited in the footnotes fully support the text. One of them, *Texas & P. Ry. Co.* v. *Gardner,* 114 Fed. Rep. 186, holds, that it is negligence to start a railroad train from a station, while a passenger is actually getting on board, regardless of the length of the stop. And in *Kulman* v. *Erie R. Co.,* (N. J.) 47 Atl. 497, it is held, that where the evidence, as in the case at bar, is conflicting, the question of the reasonableness of the stop; or whether the train was in motion when the plaintiff stepped upon the lowest step; and whether the circumstances were such as called for the exercise of reasonable diligence upon the part of defendant's servants, to see that the plaintiff had reached a place of safety, are all questions of fact to be determined by the jury, and that a motion for an involuntary nonsuit was properly refused. Our own case of *Normile* v. *Wheeling Traction Co.,* 57 W. Va. 132, 49 S. E. 1030, is also authority in support of this proposition. Our conclusion is that the court be-

low did not err in refusing to set aside the verdict for want of sufficient evidence to support it.

Another point is that the court improperly rejected defendant's instructions numbers 5 and 8. These instructions are based upon the theory that the plaintiff attempted to board the train while it was in motion. There is little evidence to support this theory. The evidence clearly shows that the entire family of the plaintiff was in the act of boarding the train at one and the same time, the husband preceding the wife, she following him in close succession. But conceding that defendant was entitled to instructions upon this theory, the law applicable to the facts in the case was fully covered by other instructions given on its behalf and there is no error.

Lastly, it is claimed that the court erred in refusing to set aside the verdict on the ground of newly discovered evidence. The motion of the defendant to set aside the verdict on this ground, was supported by the affidavits of two women to the effect, that in December, 1907, following the accident, plaintiff had admitted to them, that she had not been seriously injured, but that upon the advice of counsel she had concluded to simulate injuries, for the purposes of this suit. These witnesses are directly contradicted by affidavits of the plaintiff and her husband, corroborated by the affidavit of her counsel. The court below overruled the motion. We are only called upon here to say whether the court below abused its discretion. We cannot say so; and not being able to see that there was it is our duty to overrule the point. 29 Cyc. 904; *Trimble* v. *Tantlinger,* 104 Iowa 665; *Thompson* v. *Thompson,* 88 Cal. 110; *Goodell* v. *Hall,* 122 Ga. 435; *Grace* v. *McKinney, Id.* 425.

Finding no substantial error the judgment must be affirmed.

*Affirmed.*