ELEANOR MAY v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY and BENJAMIN E. HAWKINS, Appellant.

In Banc, November 20, 1920.

1. **NEGLIGENCE: Boarding Train: Instruction: Eliminating One Charge: Disadvantage to Plaintiff: Inconsistency.** Where there was positive evidence to the effect that plaintiff was in a group of persons

standing about the steps of a coach, waiting to board it when those who were leaving it were out of the way, and that she had put her boy on the upper step and raised her foot to 'the lower step, not only before the train had begun to move, but as soon as the steps were clear of passengers who were ahead of her, an instruction telling the jury that there was no evidence to support the charge that defendant did not "allow the train to remain motionless for a reasonable length of time to allow the plaintiff to board and enter the same and secure a reasonably safe foothold upon said train," was wrong, and placed plaintiff at a disadvantage, even where the verdict was for her. Besides, said instruction was inconsistent with another which made plaintiff's right to recover dependent on a finding that "while said train was standing at said station platform or the purpose of taking passengers, the plaintiff, in the exercise of reasonable diligence, proceeded to board said train."

2. ———: ———: Passenger Status. A person who has a ticket to a station at which defendant's train regularly stops is a passenger while waiting at the place of embarkation to take passage on the train to such station and up to the time of its departure, if reasonable diligence is used in boarding the train after its arrival. But the status of a passenger may be lost if the holder of the tickets attempts to board the train at the very second of its starting, after it has stood at the station long enough for every person who intends to take passage, to do so with safety, acting with due diligence; for unless reasonable promptness is used the implied agreement to receive such person as a passenger has expired.

3. ———: ———: Warning. It is not incumbent on a conductor or other operative of a train, after it has waited a reasonable time to discharge and receive passengers, to give notice that it is about to proceed, to persons who may be standing about the station platform with nothing in their manner to indicate that they intend to become passengers; but it is not the law that the conductor, in such emergencies, is excused from giving warning unless he actually sees some person preparing or attempting to get upon the train. The duty to give warning, before causing the train to start, arises not only when the conductor or other operative sees some person in the act of boarding, or preparing to do so, but also when, in the exercise of the vigilance exercised by prudent trainmen under similar circumstances, there is reason to believe someone is about to go aboard.

4. ———: ———: ———: Inconsistent With Defense Theory: Harmless Refusal of Instruction. If defendant bases its defense on the theory that plaintiff attempted to board the train after the signal to

start had been given and after the train was in motion, and the court directs the jury to return a verdict for defendant if they find the attempt was made under those conditions, the refusal of an instruction asked by defendant to the effect that there was no duty upon the defendant to warn the plaintiff that the train was about to proceed unless the conductor saw her, was harmless; for if defendant caused the train to start while plaintiff was in the act of boarding it, and when it knew or ought to have known that fact, it was guilty of negligence, even though she was warned before a signal to the engineer to start was given. Where plaintiff's right to a verdict is made to depend exclusively on a finding that the train was moved while she was in the act of boarding it, an instruction for defendant attempting to define under what circumstances defendant was relieved of the duty to warn her that the train was about to move, is unnecessary.

5. ———: Starting Train. To start a train which is standing at a station to receive passengers, while a person whose status is that of a passenger has not delayed unnecessarily in boarding it, is an act of negligence within itself on the part of the railroad company towards such person.

6. ———: Degree of Care Required of Carrier: Contract. Carriers of passengers are to be held to the highest practicable degree of care for the safety of their passengers. The duty arises out of the contract with the carrier by which a person acquires the status of a passenger, and by which he becomes entitled to the observance by the carrier of that unusual care to prevent him from being hurt while the status continues.

7. ———: Degree of Care Required of Conductor. But the conductor of a passenger train is individually liable to the passenger only for ordinary care. He is not under contract with the passenger, but his contract is with the carrier, and while he is liable to the carrier if he fails to exercise the highest practicable degree of care towards its passengers, he is not individually liable to the passenger if he fails to exercise that unusual care but does exercise ordinary care towards him. So that, where the passenger sued both the railroad company and the conductor for damages for personal injuries inflicted upon her by the negligent starting of a train while she was in the act of boarding it, an instruction which required the conductor, as well as the company, to exercise the highest degree of care for her safety, was erroneous, and necessitates a reversal.

8. ———: Evidence: Contemporaneous Statement of Third Party. Where plaintiff sues for damages received in boarding a train, she had waited at the station for the train which was due to arrive in twenty or thirty minutes while her husband went up town to

make some small purchase, she anxiously awaited his return, and defendant's contention is that she waited too long and tried to board the train after it had begun to move, an utterance of her husband when he entered the last store he visited that he was in a hurry, that his train was at the station, being a spontaneous statement and uttered at a place from which the station and train, only a short distance away, could be seen, and being therefore practically contemporaneous with the main event, is competent evidence on behalf of defendant.

9. ———: **Elements of Damage: All Other Facts.** An instruction on the measure of damages which tells the jury to consider, not only the proper elements by which to determine the damages to be awarded, but also "all the other facts and circumstances in evidence," where plaintiff is a mother and rearing several children, some of whom are small and one an infant, is wrong, and may be prejudicial; and the tendency to introduce those words into instructions is condemned though their insertion, if the only error, might not be reversible error.

Appeal from Buchanan Circuit Court.—*Hon. Thomas B. Allen*, Judge.

REVERSED AND REMANDED.

*H. J. Nelson, M. G. Roberts* and *E. M. Spencer* for appellants.

(1) Plaintiff's instruction in which the court charged the jury that it was the defendants' duty to exercise the highest degree of care to ascertain whether the plantiff was boarding the train regardless of whether she did so before or after the lapse of a reasonable time, was erroneous. It applied the "street car" rule to steam railroads. The error was especially manifest and extremely prejudicial when it is considered that the other alleged act of negligence pleaded, to-wit, defendants' failure to stop a reasonable time at Forest City, was not submitted to the jury in plaintiff's instructions, but was in fact withdrawn from their consideration by the trial court. After the lapse of a reasonable time for passengers to get on or off, there is no duty to exercise the highest degree of care to ascertain whether persons

are attempting to board the train.    Paul v. Met. St. Ry. Co., 179 S. W. (Mo. App.) 787; Clotworthy v. Railroad, 80 Mo. 220; Quinn v. Met. St. Ry. Co., 218 Mo. 554; Hurt v. Railroad, 94 Mo. 255; Straus v. Ry. Co., 75 Mo. 190.    (2) Under the law as declared in the foregoing decisions of this court, defendants' refused Instruction No. E, to the effect that if the train was stopped at Forest City a reasonable length of time sufficient to allow passengers to get on and off in safety, then there was no duty upon the defèndants to warn the plaintiff that the train was about to proceed unless the defendants or the employees in charge of the train actually saw the plaintiff in the act of preparing or attempting to get on the train before giving the signal to the engineer to proceed, should have been given.    See authorities supra. (3) The court erred in refusing to admit in evidence as a part of the *res gestae* the statement of plaintiff's husband when he entered Speer & Thornhill's store in the Sentney Building, 380 feet from the depot, that he was in a hurry and that his train was already at the station. The statement of a husband, even though he is otherwise incompetent to testify, or a witness, or a third party, if illustrative of the main act or connected with the principal fact, is admissible in evidence.    Redmon v. Met. St. Ry. Co., 185 Mo. 11; Strother v. McFarland, 194 S. W. 882; Crowther v. Gibson, 19 Mo. 365; Kleiber v. Peoples Ry. Co., 107 Mo. 240; 24 Am. & Eng. Ency. Law (2 Ed.), p. 66.    (4) The instruction on the measure of damages, in which the court invited and encouraged the jury to take all the facts and circumstances in evidence into consideration on the issue of the amount of damages which they would award the plaintiff, was, under the circumstances of this case, erroneous.    The fact that a plaintiff in a personal injury suit has a family of children cannot be considered in determining his or her damages, and this court has held that it is error to permit such evidence to be introduced if duly objected to. But in this case, even if the jurors were assumed to have

been so blind as not to be aware of the presence and existence of plaintiff's children while they roamed about the court room, yet the very narrative of the accident and plaintiff's alleged inability to work thereafter necessarily disclosed that she had children. (5) The instruction in the nature of a demurrer to the evidence, asked by defendant Benjamin Hawkins at the close of plaintiff's case and again at the close of all the evidence, should have been given. It is alleged and appears, without contradiction, in evidence that Hawkins was only an employee of his co-defendant, the railroad company. The plaintiff's petition charged him not with misfeasance, but with non-feasance. Under such circumstances, he is not liable in any event to third parties. McGinnis v. Ry. Co., 200 Mo. 347. (6) Plaintiff's instruction was erroneous as to defendant Benjamin Hawkins for this further reason: Hawkins was not a common carrier. Such relationship did not exist between him and the plaintiff. There was no duty, therefore, upon him, under the law, to exercise the highest degree of care so far as he, individually, was concerned. Yet the court instructed the jury that if he failed to exercise the highest degree of care, they must find a verdict against Hawkins. If Hawkins was liable at all to the plaintiff, which appellants deny, his duty was merely to exercise ordinary care.

*Duvall & Boyd* for respondent.

(1) There was no error in giving plaintiff's Instruction No. 2. (a) Plaintiff was, at the time she undertook to board the train in question, a passenger, to whom the defendants owed the duty to exercise the highest degree of care that a very prudent person would exercise under the same or similar circumstances. Benjamin v. Met. St. Ry. Co., 245 Mo. 598; Furnish v. Mo. Pac. Ry. Co., 102 Mo. 438; Iba v. Railroad Co., 186 Mo. App. 718; Lindsay v. Ry. Co., 178 S. W. 276; Barth v.

Elec. Ry. Co., 142 Mo. 535; Tibby v. Mo. Pac. Ry. Co., 82 Mo. 292; Albin v. Ry. Co., 103 Mo. App., 308.  (b) The stopping by defendant of the train in question at the depot platform at Forest City was an invitation to plaintiff to board the same, she being in possession of a ticket entitling her to passage thereon, and that invitation continued so long as the train remained standing.  Iba v. Railroad, 186 Mo. App. 718; Fields v. Met. St. Ry. Co., 169 Mo. App. 624.  (c) Plaintiff's instruction in fact required the jury to find that defendants did not stop said train a reasonable length of time at Forest City.  (d) The trial court committed error against the plaintiff when it gave to the jury defendants' Instruction No. 7, because plaintiff's evidence showed she acted with all due diligence.  (e) The mere fact, if it was a fact, that plaintiff was the last person to get upon the steps of the coach, did not render plaintiff a dilatory passenger, nor justify the court in giving defendant's Instruction No. 7.  Fields v. Met. St. Ry. Co., 169 Mo. App. 624.  (f) Plaintiff had been invited to become a passenger on the train in question, had responded to the invitation, had placed herself on the steps of the coach before the invitation was closed, and defendants were bound to treat her as a passenger, and to exercise towards her the highest degree of care.  Fields v. Met. St. Ry. Co., 169 Mo. App. 624.  (g) Appellants cannot complain of the error of the court in giving their Instruction No. 7, because they requested it.   (2) Defendant's Instruction E was properly refused.  It told the jury, in effect, that there was no duty on those in charge of the train to look to see whether or not there was anyone getting on the train at the time of giving the signal to the engineer to proceed from the station. That cannot be the law.  Thomure v. Ry Co., 191 Mo. App. 640.  (3) There was no error in excluding the alleged statement of plaintiff's husband which it was claimed he made in a store on the afternoon of the injury to plaintiff.  Such alleged statement was not ad-

missible as *res gestae.* Bonslett v. New York Life Ins. Co., 190 S. W. 870; Freeman v. Loyal Prot. Ins. Co., 195 S. W. 545; Hooper v. Standard Life Ins. Co., 166 Mo. App. 209; Ruschenberg v. So. Elec. Ry. Co., 161 Mo. 70; Barker v. Ry. Co., 126 Mo. 152; Redmon v. Met. St. Ry., 185 Mo. 1; Ranney v. Lewis, 182 Mo. App. 58; Winster v. Holmes, 177 Mo. App. 130; Whitney v. Sioux City, 154 N. W. 497; Donnelly v. Harris, 291 Mass. 466. The alleged statement of plaintiff's husband even if relevant, was objectionable as hearsay and was not rendered competent by any rule of evidence. 16 Cyc. 1195-1196. (3) There was no error in giving plaintiff's Instruction No. 3 on the measure of damages. Salmon v. Ry. Co., 197 S. W. 35; Sidekum v. Wabash Ry. Co., 93 Mo. 400; Kelly v. Stewart, 93 Mo. App. 47; McNamara v. Transit Co., 106 Mo. App. 349; Phelps v. Zinc & Lead Co., 218 Mo. 572; Harmon v. Donshoe, 153 Mo. 263; Chicago St. Ry. Co. v. Dougherty, 110 Ill. App. 204; Chicago City Ry. Co. v. Gemmill, 209 Ill. 638. (4) Under the evidence in this case the court could not have sustained a demurrer as to defendant Hawkins without doing violence to the established law of this State. The company was acting through him. His act was its act. It could act only through its servants and Hawkins was its servant, charged with the operation of the train. (5) The position taken by appellants in their last point is almost ludicrous. The company was acting through Hawkins as its conductor in charge of the train. There was a duty on him, under the law, to exercise towards plaintiff the highest degree of care. Otherwise a corporation carrier of passengers could never exercise towards its passengers the highest degree of care imposed by law, nor, indeed, could it exercise any care, or do any act, for they can act only through their servants and employees.

GOODE, J.—This plaintiff obtained a verdict against defendants for twenty-five thousand dollars for a personal injury, alleged to have been caused by the

negligence of defendants in starting the train plaintiff wished to take as she was in the act of getting on it. The defendant corporation was operating the train at the time of the accident and defendant Hawkins was the conductor of it. Nine thousand dollars was remitted from the amount of the verdict, following an announcement by the court that unless plaintiff would remit that sum and thereby reduce the judgment to sixteen thousand dollars, the defendants' motion for a new trial would be sustained. After the *remittitur* had been entered, judgment was rendered for the reduced amount, and the motion for new trial having been overruled, defendants appealed to this court.

The accident occurred at Forest City, a way station on defendant's railroad, from which a branch line runs to Oregon, the county seat of Holt County, three and a half miles from Forest City. Plaintiff and family resided at Napier, Missouri, a town on defendant company's line, six miles north of Forest City. On the day of the accident, June 3, 1916, plaintiff and her husband purchased a round-trip ticket, or tickets, from Napier to Forest City. After arriving at the latter station, they went to Oregon, transacted some affairs there, and returned to Forest City twenty or thirty minutes before the train on which they intended to return to Napier would arrive from the south. Plaintiff and her son, a boy five years of age, went into the waiting room at the station to await the arrival of the train, and the husband went into the business part of the town, where he visited two or three stores and made several purchases. There is evidence to prove that while he was purchasing in one store, the train he expected to go home on whistled for Forest City, and thereupon he went hurriedly into another store, bought something there and before he left the building, the train had come in and was standing at the station. There is no evidence directly opposed to those facts; but plaintiff testified her husband was by her side when she attempted to get on the train.

There is also testimony to show she awaited his return with anxiety, conscious that he was lingering in the town too long and the train might come while he was still away from the depot. Several witnesses testified that as the train drew into the station, plaintiff, with her son, walked out of the waiting room and a short distance along the platform of the station, toward the rear coaches; that as she did so her husband was seen hurrying toward her and was heard to exclaim: "Hurry up; they're going," or similar words.

The day was Saturday and the train had been well loaded with passengers all the way from St. Joseph; a goodly number of passengers got off the train at Forest City, and not quite as many got on. Plaintiff testified she attempted to get on the coach next to the rear end of the train and as soon as she had an opportunity to do so; that is to say, as soon as the passengers who were leaving the train and others ahead of her who wished to take passage, were out of her way. She testified further that while the train was standing and without motion, she lifted her little son onto the next step below the platform of the coach, then took hold of the left handrail of the coach with her left hand, planted her left foot on the bottom step, and as she was in the act of putting her right foot on the step, the train commenced to move, thereby preventing her from getting a secure footing on the step and dragging her along until she fell between the rails of the track and the station platform, and received injuries which will be described presently. She testified, too, and there is other testimony to the same effect, that no warning or notice of any kind was given before the train started; that the conductor signalled the engineer to start by lifting his hand, and that this motion was made by the conductor immediately after plaintiff had placed her foot on the step of the coach; that none of the train crew was near to assist her in getting aboard. Those statements were corroborated by several witnesses and were contra-

dicted by several, who swore positively plaintiff did not attempt to get on the coach until the train was moving; that after it had started she put her boy on the steps of the coach; that as she was unable to obtain a secure footing and was carried forward by the motion of the train, a gentleman standing on the platform of the coach seized the boy and held him; that plaintiff stumbled along a short distance and then fell between the track and the station platform.

The plaintiff's own testimony, and the testimony of four or five witnesses besides, leaves the impression that the signal for the train to start was given after her foot was on the steps, and that the movement of the train began afterwards. The evidence tends to prove, too, a considerable number of passengers had been standing on the station platform around the steps of the coach, intending to take passage, and were getting on up to the time the train started; and when it started some of them were on the platform of the coach, and some standing in the aisle, not yet having had time to find seats.

The impression left by the testimony of the witnesses for defendants is that plaintiff went outside the door of the depot when the train drew up to the platform, and remained outside, waiting for her husband, who came up hurriedly while she was there and urged her to hasten as the train was starting, or about to start; that she had not advanced toward the train until it started, and that she attempted to get on it after it was in motion.

The length of time the train stopped to receive and discharge passengers was estimated by the witnesses at from one and a half to five minutes. The conductor testified the stop was four minutes; also that before giving the signal to start, he looked up and down the depot platform, saw no one was alighting or getting on the train, then walked forward to the baggage car and helped load some packages which were to be carried as

express matter; when this had been done, he looked down the platform and seeing the train was clear of alighting or boarding passengers, called out: "All aboard!" waved his hand to the engineer to start and walked back along the train, intending to get on the smoking car. He then saw plaintiff attempt to place her child on the steps of the coach next to the rear end of the train; this was after the train had started and was moving faster than she could keep up with; she was "kind of pitching forward;" he sprang onto the front end of the smoking car, and pulled the automatic cord for a stop.

When plaintiff was picked up she was unconscious and remained so for eight hours. She had been struck on the left side over the heart; had received a severe blow on the temple above the left eye; a bruise on the back of her head; injuries to her spine, and the fracture of two ribs. She was confined to her bed for four months or more, and got up first on Thanksgiving day. After the injury her left leg was paralyzed and, in the opinion of a physician or two, the paralysis is permanent. One doctor said he ran a red hot iron up and down her left leg without the exhibition of any sensation of pain; another physician said he thrust pins into the leg and she showed no sign of pain. Her left eye lost half its visual power by atrophy of the optic nerve, and a physician testified he thought this condition would be permanent. For a long time her head would draw back almost straight between her shoulders; she has suffered from dizziness and has to sit down, now and then, when walking, to avoid falling. Up to the time of the trial, which was a year and a half after the accident, she had been compelled to use a crutch in walking; walks better with two than one, but uses one by the advice of her physician, because two hurt her back. She has endured much pain from her injuries. Two physicians testified her condition in the respects aforesaid could have been caused by the blows she received from the train while

it moved along and she was clinging to the handrail, and by falling as she did.

Two charges of negligence are made in the petition: one that defendants did not stop the train " and allow the same to remain motionless for a reasonably sufficient length of time to allow the plaintiff to board and enter the same and secure a reasonably safe foothold upon said train.'' The court eliminated that charge of negligence from the case by an instruction which declared there was no evidence to prove it. The other charge was, as we have stated, that while plaintiff was in the act of boarding the train, defendants carelessly and negligently caused and permitted it to start and move forward suddenly and violently, without warning plaintiff, "when they knew, or by the exercise of due care and diligence, could and would have known, that the plaintiff was in the act of boarding said train and was in a position of imminent peril and place of danger, stepping upward and attempting to board and enter said passenger train, and that she was in danger of being thrown down and injured by the starting of said train.''

Defendants complain of the giving of two erroneous instructions for plaintiff, and the refusal of one requested by defendants (which should have been given); the refusal to direct a verdict in favor of conductor Hawkins; excluding testimony to prove an exclamation made by the husband of plaintiff when he entered the store last visited by him, to the effect that he was in a hurry as his train was already at the station; the heavy verdict returned, which is said to have been so excessive as to show the jury were influenced by prejudice against defendants and sympathy for plaintiff, and that the amount of the verdict, even after the *remittitur* had been entered, was in excess of a just award.

The principal instruction for plaintiff, after hypothesizing issues about which no question has been raised on the appeal, advised the jury, in effect, that if plain-

tiff had a ticket from Forest City to Napier, and was waiting at the former station to take passage on the train when it arrived, then plaintiff, at that time, was a passenger of defendant company. The instruction then proceeded as follows:

"That it was the duty of said railroad company by and through its said conductor and other agents, servants and employees in charge of said train, to exercise the highest degree of care that very prudent persons would use or exercise under the same or similar circumstances, for the safety of plaintiff while she was in the act of and attempting to board said train for the purpose of being transported thereon; and if you further believe and find from the evidence that while said train was standing at said station platform for the purpose of taking on passengers, if you so find, the plaintiff, in the exercise of reasonable diligence and ordinary care on her part, proceeded to board said train for the purpose of being transported as such passenger, and that at said time and place the defendant railroad company, and the defendant Benjamin E. Hawkins, in charge of said train as conductor of defendant railroad company, if you find from the evidence he was the conductor in charge thereof, negligently caused or suffered said train to start while plaintiff was so in the act of boarding the same, without any warning to plaintiff, and that at the time of so negligently starting said train, if you find it was so negligently started, the defendant railroad company, and the defendant Benjamin E. Hawkins, so in charge of said train as conductor, if you so find, knew, or by the exercise of the highest degree of care that a very prudent person would exercise under the same or similar circumstances, would have known that plaintiff was in the act of boarding said train, and that the negligent starting of said train, if you so find, caused plaintiff to be jerked or thrown therefrom and injured, and that plaintiff at all such times was in the exercise of such care, caution and diligence as an ordinarily careful and prudent person would exercise under

the same or similar circumstances—then the plaintiff is entitled to recover in this action and it is your duty as jurors to return a verdict in her favor.''

We copy defendants' refused instruction ''E:''

''The court instructs the jury that if you find and believe from the evidence that the train in question was stopped at Forest City a reasonable length of time sufficient to allow passengers to get on and off in safety, then there was no duty upon the defendants to warn the plaintiff that the train was about to proceed, unless the defendants or the employees in charge of the train actually saw the plaintiff in the act of preparing to or attempting to get on the train before giving the signal to the engineer to proceed from that station.''

Complaint is made also of the instruction given at plaintiff's request on the measure of damages, because, after advising the jury as to all the suffering from her injuries and the nature and probable permanency of them, as facts to be considered in estimating the damages to be awarded, the jury was told to consider along with those matters, ''all the other facts and circumstances in evidence.''

I. The essential ground for a verdict for plaintiff was, that defendants did not hold the train at the station a sufficient length of time for persons who intended to leave or get aboard to do so in safety. Boarding Train. There was abundant evidence in the record to prove not enough time for that purpose was afforded; abundant evidence, too, to prove the injuries to plaintiff were caused by the starting of the train by the conductor without allowing her sufficient time to obtain a footing on the steps. Her own statements and those of corroborating witnesses are positive, to the effect that she was in a group of persons standing about the steps of the coach, waiting to climb on when those who were leaving the train were out of the way; that she had put her boy on the steps of the coach and raised her foot to the lower step, not only before the train had

begun to move, but as soon as the steps were clear of passengers who were ahead of her. The instruction that there was no evidence to prove the employees of the company in charge of the train failed to hold it a sufficient length of time to allow passengers to get on in safety, was wrong, and put plaintiff at a disadvantage. The instruction was inconsistent with the principal one given for plaintiff; for the right of the jury to return a verdict for her under the latter instruction depended, among other things, on a finding that "while said train was standing at said station platform for the purpose of taking on passengers . . . the plaintiff, in the *exercise of reasonable diligence* . . . proceeded to board said train." If the plaintiff was reasonably diligent in her endeavor to take the train, which it was incumbent on her to be, and nevertheless the train started before she succeeded in getting on it securely, as the said instruction required the jury to find in order to give her a verdict, it clearly follows the train did not remain standing at the station a sufficient time to take on intending passengers.

In view of the requirement that plaintiff must have exercised diligence in boarding the train, the portion of the charge which said she was a passenger when she en-

Passenger.     deavored to do so, was correct. If she had a ticket from Forest City to Napier and was waiting at the station to take passage on the train and attempted to take passage with reasonable promptness, her legal status was that of a passenger, and defendant company's employees in charge of the train owed her the duty of high care for her safety. [Benjamin v. Railway Co., 245 Mo. 598, 608.] We, therefore, find nothing unsound in the theory of the principal instruction for plaintiff in regard to the facts on which it conditioned the liability of the railway company. If plaintiff had been belated, a possibility contrary to the hypothesis of the instruction, and had attempted to board the train at the very second of its starting, after it had stood at

the station during an interval long enough for 'every person who intended to take passage to do so by acting with due diligence, it may be that she would not have occupied the status of a passenger, for the reason that the implied agreement of the company to receive her as such, would have expired; and the operatives of the train might then presume, nothing to indicate otherwise occurring, that all persons who meant to take the train were aboard. [Hunt v. Railroad, 94 Mo. 256, 263; Chicago Railway Co. v. Lampman, 18 Wyo. 106, 24 Ann. Cas. 788; 3 Thompson, Negligence, § 2861.]

II. The instruction requested by defendants and refused, in regard to the duty to warn plaintiff, was rightly refused, because it was not an exact statement of the law, and because, too, an instruction of that character was not required in view of the theory of re-

Warning.

covery adopted by the court below. It is not incumbent on a conductor or other operative of a train, after the train has waited a reasonable time to discharge and receive passengers, to give notice it is about to proceed, to persons who may be standing about the station platform with nothing in their manner to indicate they intend to become passengers. But the duty to give warning in such a contingency before causing the train to move, arises not only when an operative of the train *sees* some person in the act of boarding it, or preparing to do so, but also when, in the exercise of the vigilance exercised by prudent railroad operatives under similar circumstances, there is reason to believe some one is about to get aboard. [Straus v. Railroad, 75 Mo. 185; Ibid, 86 Mo. 421; Clotworthy v. Railroad, 80 Mo. 221, 24; Hunt v. Railroad, supra.]

Moreover, the case was submitted on theories which did not require an instruction of that character in order to present fairly the defenses. On the hypothesis of defendants—that plaintiff attempted to get on the train, not only after the signal to start had been given, but after the train was in motion—the refusal of the in-

struction was harmless, because the court directed the jury to return a verdict for defendants if they found the attempt was made under those conditions.

The jury were permitted to return a verdict for plaintiff only in the event they found the defendants negligently caused or suffered (sic) said train to start without warning plaintiff, while she was in the act of boarding it, or when defendants knew she was, or would have known had they been sufficiently careful. If defendants caused the train to start while plaintiff was in the act of boarding it, and when they knew or ought to have known that fact, they were guilty of negligence; and would have been, even if they had warned her before the signal to the engineer was given; that is to say, to start a train which is standing at a station to admit passengers, while a person who has not delayed unnecessarily is boarding it, is an act of negligence in itself. [Texas Ry. Co. v. Gardner, 52 C. C. A. 124; Norfolk Ry. Co. v. Groseclose's Admr., 88 Va. 267.

The plaintiff's right to a verdict having been made to depend exclusively on a finding *that the train was moved* while she was in the act of boarding it, the instruction about what circumstances would relieve defendants of the duty to warn her *the train was about to move,* was not necessary. Had the court submitted to the jury as cause for a verdict for plaintiff, neglect of the company's employees to warn her the train was about to start, when she was approaching to get on it, then, if it had been detained at the station for a time reasonably sufficient to enable intending passengers to get safely aboard, defendants would have had the right to an instruction in the nature of the one refused; but not in the form it was drawn. As said above, in such a contingency the law did not bind the trainmen to warn her unless they knew, or had reason to believe she would attempt to take the train. [2 Moore, Carriers, (2 Ed.) sec. 50, p. 1240; Straus v. Railway Co., 75 Mo. 191;

Clotworthy v. Railroad, 80 Mo. l. c. 224; Hatch v. Railway Co., 212 Pa. St. 29; Norfolk Ry. Co. v. Groseclose's Admr., 88 Va. 267; Duty v. Railroad, 70 W. Va. 14; Bockelcamp .v. Railway Co., 232 Pa. St. 66; Paulitsch v. Railroad Co., 102 N. Y. 280.]

III.    The principal instruction for plaintiff laid the conductor, as well as the company, liable if he knew, or by the exercise of the high degree of care Conductor's that a very prudent person would exercise Care and under similar circumstances would have Liability. under similar circumstances would have known, plaintiff was in the act of boarding the train when he caused it to start.    That instruction submitted as causes for a verdict against the conductor, two possible findings : First, that he knew when he started the train plaintiff was getting on; a fact that, of course, would make him responsible to her for the damages she suffered; for it would show he wantonly injured her; second, that by using the high care a very prudent person would have exercised, he would have known she was getting aboard.    The latter hypothesis raises a question which must be answered mainly on principle, for we have found no comment on it in text-books, and but one decision that is in point.

If the conductor was unaware, by reason of lack of due vigilance, of plaintiff's position of peril when he signalled to the engineer to go ahead, his fault was one of omission; not of positive wrong, and, unless the duty of highest vigilance was by the law imposed on him as an individual and independently of his representing the railway company, there is much authority in this State, and elsewhere, for saying he is not liable to plaintiff; not liable for the non-performance of a duty growing out of his employment, though he would be answerable over to the company under the duty to it to use high care not to inflict injuries; and that was the measure, too, of the care the company was bound to observe.    Instances like those where the law requires of both employer and employee only ordinary care, present no difficulty; and

of that character are all the cases we have examined, except one to be noticed presently. Everybody, regardless of any contract he may be under to render a particular service, has the duty imposed on him by law to be ordinarily careful, the circumstances considered; not to hurt other persons; and is responsible to any one who is harmed by a breach of that duty. Carriers of passengers have been held, from time immemorial, to a higher degree of care for the safety of their passengers: and, in fact to the highest practicable care. This duty is placed upon them by the law from a motive of public policy. [Indianapolis Ry. Co. v. Horst, 93 U. S. 291.] In consequence of the rule, when a person acquires the status of a passenger, which he does by a contract with the carrier, he becomes entitled to the observance by the carrier of that unusual care to prevent him from being hurt while the relation of carrier and passenger continues. But a carrier's employees are not under any contract with a passenger, whereby the ordinary care incumbent upon them not to hurt him, is lifted to a higher degree. And at this point the decried doctrine that an employee is not responsible to a third person for damage due to omitting some precaution by the employee while engaged in his task, leads to a just result, whether or not it is the best way to state the test of the employee's liability. If the non-feasance, or neglect, was a precaution incumbent on the employee only by virtue of his contract of employment, the breach of said contract was not a breach of a duty owed to the third person, but one owed to the employer.

It is argued, and plausibly, that a carrier company can observe the highest care toward its passengers only through its employees, and therefore the latter are bound to use that much care. They are bound as between them and the company; but the question is whether their obligation extends to the passenger, so that an action lies in his favor against them in person for failure to practice the highest care. Their duty to do so arises from their relation to the company, and their obligation to

use the highest practicable care is to it and not to the passenger.

In Keep v. Indianapolis & St. Louis Railway Co., and Keep v. Union Railway and Transit Company, 9 Fed. 625, two cases that were consolidated and tried as one, the plaintiff was hurt in a collision of the train he was on with a gravel train. He had taken passage on the Indianapolis & St. Louis Railway from New York to St. Louis, and had been carried safely to East St. Louis. At the latter station the Union Railway & Transit Company was under contract with the other company to haul all the latter's trains into St. Louis for a consideration. Otherwise stated, the Union Railway & Transit Company was an employee of the Indianapolis & St. Louis Railway Company for the hauling of trains between St. Louis and East St. Louis. While drawing the particular train the plaintiff was on, the collision occurred; and at the trial it was necessary to instruct the jury concerning the degree of care each of the defendant railway companies was bound to observe for plaintiff's safety; and the court instructed upon the matter as follows:

"The duties of the Indianapolis & St. Louis Railroad Company to the plaintiff as a common carrier, if the facts are as alleged, did not cease until the arrival of the train at St. Louis, although it may have entered into a contract with others to furnish the motive power for hauling the train over the bridge and tunnel. If it was not one of the connecting roads for a through route, its liability ended at the termination of its route

"As to the Union Railway & Transit Company, its liabilities are not those of a common carrier. It had entered into no personal contract with the plaintiff, unless it was one of the common carriers in the through route. But the charter of the latter company does not make it a common carrier as to operations in East St. Louis, nor do any of the contracts produced. Hence the Union Railway & Transit Company is not liable to the plaintiff for any injury sustained, unless it was guilty

of direct negligence or unskilfulness, causing the said injury. If that company did, through such negligence or unskilfulness, cause the injury alleged, it must respond in damages; otherwise, not.

"Thus, the jury will decide—first, did the plaintiff sustain any injury; and, if so, what is the amount of damages to be awarded him? Second, whether the injury was sustained by plaintiff from the negligence of its agents. Third, as the liability of the Union Railway & Transit Company rests upon the degree of negligence of which it was guilty, whether its direct negligence or unskilfulness caused the injury. It was bound, not to the extraordinary diligence required of a common carrier, but to the ordinary diligence and skill which its employment needs." [9 Fed. 1. c. 628.]

That case is like this one in the fact pertinent to the point in hand; that is to say, the Transit Company was an employee of a carrier of passengers, and a passenger having been injured and both companies sued, the inquiry as to the extent of the obligation of each to him to be careful for his safety, was presented. This instruction was given by a judge of experience and distinction and, we think, was sound.

IV. Whether or not the court wrongly excluded the evidence of the utterance of plaintiff's husband when he entered the last of the stores he visited, that he was in a hurry, as his train was at the station, is a close question Evidence. but we incline to the opinion the evidence was competent. Plaintiff had been anxiously awaiting her husband's arrival and the latter's exclamation tended to sustain the defendant's contention that she waited too long after the train had stopped and tried to get on board while it was moving. The statement was a spontaneous one, uttered where the station and train could be seen, only a short distance away, and was practically contemporaneous with the main event; or at least was close enough to it in point of time, and sufficiently connected with it, to be competent under the

284 Mo.—34

weight of authority. [1 Greenleaf, Evidence (16 Ed.), pp. 264, 265, sec. 162g; 4 Chamberlayne on Evidence, secs. 2992 et seq., sec. 3015; 1 Wharton on Evidence (3 Ed.), secs. 259, 260; State v. Walker, 78 Mo. 380; State v. Kaiser, 124 Mo. 651, 656; Coll v. Transit Co., 180 Pa. 618; Mo. Pac. Ry. Co. v. Collier, 62 Texas, l. c. 320.] The two cases last cited are not materially different from this one, so far as the point in hand is concerned. In the Texas case, the plaintiff had been injured by the derailment of a train, and had testified that just before the accident a fellow passenger had commented on how short a time the train had been in passing from one station to another, a remark tending to prove it was running at a high rate of speed. The court of appeals held this testimony was properly received. The cited Missouri cases are closely in point, too.

V. This court and the other courts of review of the State, have never approved an instruction on the measure of damages which told the jury to consider, in estimating the damages, not only the proper elements by which to determine the damages to be awarded, but also all the other facts shown in evidence. They have refused to reverse judgments for the giving of such instructions when the true elements of damages were pointed out, on the theory that the jury understood they were to consider in computing the assessment of damages, only facts in evidence which were relevant to the question; or else that no facts were in evidence which would tend to increase unduly the assessment. In the present case it was proved plaintiff was the mother of and rearing several children, some of whom were small and one an infant. The jury may have thought those were facts to be weighed on the issue of the amount to be awarded. The latitude thus allowed a jury in estimating damages, is wrong, and may be prejudicial. A tendency is noticeable to introduce into instructions this broad language, probably in consequence of the fact that no case has been reversed for that reason. The practice

is to be condemned; for no facts ought to be weighed in assessing damages, except those which tend to prove the actual amount of the damages. The verdict in the present case was so large the trial court deemed it necessary in the interests of justice, to call on plaintiff to remit nine thousand dollars; and in view of the *remittitur* and the extent of plaintiff's injuries, we might pass over this error, had no other occurred prejudicial to defendants.

The judgment is reversed and the cause remanded.

PER CURIAM:—The opinion of GOODE, J., in Division No. 1, is adopted as the opinion of Court in Banc. All concur, except *Woodson, J.,* not sitting